In Equity.

TELEGRAPHONE CORPORATION

*vs.*

CANADIAN TELEGRAPHONE COMPANY.

York.    Opinion February 19, 1908.

*Equity.   Written Contracts.   Time.   Forfeiture.   Specific Performance.   R. S.,*
*chapter 79, section 6, par. II.*

The jurisdiction of a court of equity to compel the specific performance of
. written contracts does not rest upon any distinction between real and
personal estate, but upon the ground that damages at law may not in a
particular case afford a complete remedy, and that whether or not this
equitable remedy will be granted is a matter of sound judicial discretion
controlled by established principles of equity and exercised upon a consid-
eration of all the circumstances of the case.

It is a well settled doctrine that ordinarily, a court of equity will not actively
interfere by its decree to enforce a forfeiture and that its refusal so to do
rests upon the same principle upon which the court acts when it refuses to
enforce a contract which is unequal, unjust or has any inequitable features
and incidents.

If it satisfactorily appears from the terms of a contract and all the circum-
stances, that the parties thereto actually intended to make the time speci-
fied an essential element of the contract and that the consequences of the
failure of performance must have been contemplated by the parties at the
time of the execution of the contract, such an express stipulation as to
time will be held decisive of the question in a court of equity as well as in
a court of law.

In the case at bar, the plaintiff, in accordance with the terms of a written
contract, assigned a certain patent right to the defendant and received
therefor $25,000 in cash and $105,000 in notes and also retained a beneficial
interest in the development of the patent by a further provision that it
should receive twenty per cent of the capital stock of the defendant com-
pany, which was organized to exploit it, at the time of the delivery of the

assignment.  It was also agreed that the defendant should raise a working capital of $50,000 or give the plaintiff thirty-four per cent more of its capital stock and the resulting control of the company.  Upon the defendant's failure to perform either of these agreements on or before the times specified in the contract, it was further expressly agreed in the same paragraph that the plaintiff should repossess the patent right.  It was also covenanted and agreed in a separate paragraph of the contract that time should be "of the essence of the agreement."  The defendant failed to perform either of these agreements within the time stipulated and the plaintiff brought a bill in equity to compel the defendant company to perform the contract specifically by transferring the title to the patent right back to the plaintiff corporation.

*Held:*  (1)  That as the contract relates to a patent right which on the one hand may be superseded by another and better invention and thus become practically worthless, and on the other may become of great value by giving its owner a monopoly of all branches of business to which it is applicable, and that in any event, its value cannot be known with certainty or exactness until after the lapse of time, substantial justice can only be done by a specific performance of the contract.

(2)  That there is no evidence to warrant the conclusion that the plaintiff corporation intentionally relinquished its right to insist upon the performance of the contract according to its terms and nothing to justify the defendant company in believing that the plaintiff had waived such right.

(3)  That it does not appear that the cash payment received by the plaintiff in consideration of the assignment was more than adequate compensation for the loss suffered by it as a result of the unexplained neglect of defendant to furnish the working capital and develop the business as contemplated by the contract; that the liability to any forfeiture either of the patent right or of the consideration paid for it was not a necessary result of the terms of the agreement when originally made, but arose from the subsequent acts and omissions of the defendant company which its officers have not attempted to justify or explain, and that any apparent hardship arising from such causes and under such circumstances cannot be deemed a sufficient cause for refusing a specific performance as damages at law would not be a full and adequate remedy.

(4)  That it appears from the terms of the contract and the circumstances that the parties thereto actually intended to make the time specified an essential element of the contract.

(5)  That the defendant's express stipulation in the contract that upon failure to perform its agreements, the assignment of the patent should terminate and become void and that the plaintiff should thereupon have, hold and repossess the patent as if the assignment had never been made, upon the facts disclosed in the case, created an obligation in equity on the part of the defendant to execute and deliver the necessary legal instruments to transfer the title to the patent back to the plaintiff corporation.

In equity. · On appeal by defendant. Appeal dismissed. Decree below affirmed.

Bill in equity brought by the plaintiff corporation to compel the specific performance of a contract signed by the defendant company. The defendant company filed its answer to the bill and the cause was then heard on bill, answer and proofs by the Justice of the first instance who sustained the bill and filed a decree in accordance with the prayer of the bill. The defendant company then appealed to the Law Court as provided by Revised Statutes, chapter 79, section 22.

The case appears in the opinion.

*Isaac W. Dyer*, for plaintiff.

*Frederick A. Hobbs and Anthoine & Talbot*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J.   This is a bill in equity brought by the plaintiff corporation to compel the specific performance of a contract signed by the defendant company. The bill was sustained by the Justice presiding and a decree entered in accordance with the prayer of the bill. The case comes to the Law Court on appeal from that decree.

On the 30th day of April, 1906, the plaintiff corporation, organized under the laws of Maine, entered into a written contract with the defendant company, referred to in the contract as "the company," a corporation organized under the laws of Maine with a capital stock of one million dollars, whereby the plaintiff was to assign to the defendant certain letters patent granted by the Dominion of Canada to Valdemar Poulsen, for improvements in apparatus for electromagnetically recording and reproducing speech and other signals. In consideration of this assignment the defendant company agreed to pay to the plaintiff the sum of $25,000 in cash, upon the execution and delivery of the contract and of the assignment, and the sum of $5,000 in cash on or before May 15, 1906. The defendant also agreed to give the plaintiff four notes of $25,000 each payable October 1, 1906, April 1, 1907, September 1, 1907, and March 1, 1908, respectively, and deliver to the plain-

tiff twenty per cent of the stock of the defendant corporation. The contract further stipulated as follows :

"4.  It is mutually covenanted and agreed that the said company, party of the second part hereto, shall be a legal corporation duly incorporated with a share capital of at least ($1,000,000) One Million Dollars, fully paid and non-assessable.  It is also covenanted and agreed that should said company at any time hereafter issue any securities of any kind and fail to deliver as above provided to said Corporation within thirty days after written notice from said Corporation to said company (20 per cent) twenty per cent of said last mentioned securities then this agreement and the assignment of said Canada Patent Number 73,385 and the assignment or assignments of any patent or patents that said Corporation may make to said company hereafter, shall thereupon terminate and become void, and thereupon the Corporation shall have, hold, and repossess said Patent of Canada and all other patents that may have been assigned as aforesaid at any time to said company as if neither this agreement nor the assignment of said patent or patents had ever been made.

"5.  Said company hereby further covenants and agrees that it will cause and procure the payment into the treasury of the company, from the sale of stock or otherwise, the sum of ($25,000.00) Twenty-five thousand Dollars lawful money of the United States to be used as working capital or for the payment of company expenses, on or before January 1, 1907, and if the company shall not cause and procure said sum of ($25,000.00) Twenty-five thousand Dollars to be so paid into the treasury as aforesaid, then said company shall on the second day of January, 1907, pay over and deliver to the Corporation the additional amount of (17 per cent) seventeen per cent of the present capital stock of the company and (17 per cent) seventeen per cent of any and every issue of stock and securities hereafter made by said company ; and the company further covenants and agrees that it will cause and procure the payment, from the sale of stock or otherwise, the further sum of ($25,000.00) Twenty-five thousand dollars lawful money, as aforesaid, to be used as working capital or for the payment of company expenses, on or before May 1, 1907, and if the company shall not cause and procure said

further sum of ($25,000.00) Twenty-five thousand dollars to be so paid into the treasury of said company as aforesaid, then said company shall on the second day of May, 1907, pay over and deliver to the Corporation the additional amount of (17 per cent) seventeen per cent of the present stock of said company and (17 per cent) seventeen per cent of any and every issue of stock and securities hereafter made by said company, and it is mutually agreed that if said company shall fail to pay over said additional shares of stock or any part thereof, then this agreement and the assignment of said Canada Patent Number 73,385 and the assignment or assignments of any patent that said corporation may make to said company hereafter shall thereupon terminate and become void; and there-upon the corporation shall have, hold and repossess said Patent of said Canada and all other patents that may have been assigned at any time to said company as aforesaid, as if neither this agreement nor said assignments of patent or patents had ever been made.

"6.    It is further mutually covenanted and agreed that time is, and shall be of the essence of this agreement."

It is not in controversy that in accordance with the terms of the contract the patent was duly assigned to the defendant company, and that the defendant thereupon paid to the plaintiff the sum of $25,000 in cash and gave the plaintiff four notes for $25,000 each, as specified, and twenty per cent of its stock, all of which the plaintiff retains.

But with respect to the agreements contained in paragraph 5 of the contract above quoted, the plaintiff's bill contains the following averments, viz :

"Fifth :    Said Plaintiff Corporation avers that said Defendant Company has not, from the sale of stock or otherwise, made, caused and procured to be paid into its treasury said two sums of twenty-five thousand dollars each, as set forth in paragraph Fourth hereof, and has not paid over and delivered to the Plaintiff Corporation the two amounts of seventeen per cent of the present capital stock of the said Defendant Company and seventeen per cent of any and every additional issue of stock and securities, or any part thereof, as set

forth in paragraph Fourth of this Bill, but has wholly neglected and refused to do so.

"Sixth: And said Plaintiff avers, on information and belief, that said Defendant has only issued and caused to be provided for issue, the share capital aforesaid, to wit, One Million Dollars, and has wholly parted with and distributed, assigned and transferred all of the shares of said One Million Dollars of capital, and said assignment and transfer and distribution by said Defendant Company has been among its own stockholders, promoters and officers, and in total disregard of the Plaintiff Corporation's rights under the aforesaid agreement, and that by its wrongful act, said Defendant Company has placed it out of its power to issue to the Plaintiff Corporation the thirty-four per cent of its share capital as set forth in paragraph Fourth hereof."

In its answer the defendant company admits the execution of the agreement and the assignment of the patent to the defendant as stated in the bill, but alleges that before the expiration of the time within which it was to perform the stipulation set forth in paragraph five of the contract, the plaintiff waived the terms of it and extended the time within which the defendant company was required to furnish the working capital of $50,000, or deliver to the plaintiff the two instalments of capital stock as required by the agreement; and it denies·that it has distributed all of the capital stock among its own stockholders and officers, or that by any wrongful act it has placed it out of its power to issue to the plaintiff the thirty-four per cent of its capital stock as alleged in the bill.

The only evidence introduced consists of the testimony of Mr. Lindley, the president of the plaintiff corporation, and his testimony stands entirely uncontradicted and unexplained. No evidence was introduced in defense. Mr. Lindley states that the plaintiff corporation received "the payments provided for to be made upon the signing of the contract and the notes which were then to be delivered, and the twenty per cent of the capital stock at the time of the organization of the Canadian Company; that is all." He further testifies that although he had specifically demanded, in behalf of the plaintiff corporation the fulfilment of each of the agreements set

forth in the contract, and also a reassignment of the patent by the defendant to the plaintiff, he has never received the thirty-four per cent of stock, or any part of it, and that no one of the agreements has been fulfilled by the defendant except those first stated by him. He also states that an examination of the defendant's stock ledger disclosed the fact that all of the capital stock of the defendant company had been issued, with the exception of something over eleven per cent of it which remained in the treasury.

With respect to the alleged waiver of the terms of the contract and an extension of time by the defendant company, it satisfactorily appears from Mr. Lindley's testimony in cross-examination that while there were some negotiations looking to an extension of time for the performance of the defendant's agreements, the reasonable conditions imposed by the plaintiff were never complied with by the defendant company. There is no evidence in the case to warrant the conclusion that the plaintiff corporation intentionally relinquished its right to insist upon the performance of the contract according to its terms and nothing to justify the defendant company in believing that the plaintiff had waived such right. In the absence of any evidence in behalf of the defendant tending to contradict or modify it, the plaintiff's testimony is entitled to be received at its full probative force. The allegations in the plaintiff's bill are accordingly sustained by the testimony.

Here then is a carefully prepared written contract signed by both parties for the transfer of a patent right for a valuable consideration and upon terms and conditions to be performed by the defendant on or before certain specified dates. It is not in controversy that this contract was complete, unambiguous, definite and certain; that it was free from misapprehension, fraud or mistake, and entirely fair and reasonable in all its parts. It was not lacking in mutuality either in the terms of the contract when made, or in the remedy in equity at the time of filing the bill; and it is not contended that the performance of the agreements at the time specified would have been attended with any oppression or hardship on the defendant. It has been seen that it is not merely a contract for the sale and delivery of a patent right. The plaintiff, it is true, agreed to

transfer to the defendant the legal title to the patent, but retained a beneficial interest in its development by providing that it should receive twenty per cent of the capital stock of the defendant company, which was organized to exploit it, at the time of the delivery of the assignment. The defendant agreed to raise a working capital of $50,000, or give the plaintiff thirty-four per cent more of its capital stock and the resulting control of the company. Upon the defendant's failure to perform either of these agreements on or before the times specified in the contract, it was expressly agreed in the same paragraph of the contract, that the plaintiff should repossess the patent right. It was also formally "covenanted and agreed" in a separate paragraph of the contract that time should be "of the essence of the agreement."

But instead of furnishing a working capital of $50,000, the defendant appears to have expended its energies in issuing all of its eighty per cent of the capital stock, with the exception of about eleven per cent remaining in the treasury, as above stated. If in consequence of this disposition of its capital stock the defendant has been deprived of the power to perform its alternative stipulation to give the plaintiff 34 per cent more of its stock, such inability of the defendant must be deemed the result of its own acts performed in disregard of the terms of the contract and of the rights of the plaintiff.

It thus clearly appears that in this case all of the conditions and elements are found to exist which bring it within the class of contracts in which the equitable jurisdiction of the court may be exercised to enforce specific performance. Whether or not this equitable remedy will be granted is a matter of sound judicial discretion controlled by established principles of equity, and exercised upon a consideration of all the circumstances of the case. Pom. Eq. Rem. vol. 2, sect. 762. Pom. Eq. Jur. sect. 1404.

It is contended in behalf of the defendant that a decree for the specific performance prayed for involves not only a reassignment of the patent right to the plaintiff, but a loss of the entire consideration paid to the plaintiff, and hence that it is in effect a bill to enforce a forfeiture rather than a bill for specific performance. It

is claimed that if there has been any failure on the part of the defendant fully to perform its agreements, an action at law to recover damages would afford an adequate remedy without resorting to the harsh remedy of forfeiture.

With respect to breaches of contract concerning this class of property, the equitable principle to be applied is well stated in *Corbin* v. *Tracy*, 34 Conn. 325, as follows :

"The justice of a court of equity does not proceed upon any distinction between real estate and personal estate but upon the ground that damages at law may not in the particular case afford a complete remedy. . . . When the remedy at law is not full and complete and when the effect of the breach cannot be known with any exactness, either because the effect will show itself only after a long time, or for any other reason, courts of equity will enforce contracts in relation to personality.

"An application of these principles to the case before us relieves it of all difficulty. The contract relates to a patent right, the value of which has not yet been tested by actual use. All the data by which its value can be estimated are yet future and contingent. Experience may prove it to be worthless ; another and better invention may supersede it ; or it may itself be an infringement of some patent already existing. On the other hand, it may be so simple in its principle and construction as to defy all competition and give its owner a practical monopoly of all branches of business to which it is applicable. In any event, its value cannot be known with any degree of exactness until after the lapse of time ; and even then it is doubtful whether it can be ascertained with sufficient accuracy to do substantial justice between the parties by a compensation in damages. On the whole, we are satisfied that justice can only be done in a case like this, by specific performance of the contract." See also *Hull* v. *Sturdivant*, 46 Maine, 34 ; *Nugent* v. *Smith*, 85 Maine, 433 ; Pom. on Specific Perf. of Contracts, sect. 20 ; Pom. on Eq. Rem. (1905) Vol. 2 (Vol. 6 of 3rd Ed. of Pom. Eq. Jur.) sect. 751, and cases cited.

It is clear that an action for damages would not be an adequate remedy in the case at bar.

In regard to the defendant's loss of the consideration paid by the defendant, it appears from the testimony that the four notes of $25,000 each had been endorsed and delivered to other parties and the plaintiff offered to show that they were in the custody of certain officers and stockholders of the defendant company and beyond the plaintiff's control. With respect to the cash payment of $25,000, the plaintiff contends that it is inadequate compensation for the loss suffered by it as a result of the unexplained neglect of the defendant to furnish the working capital and develop the business as contemplated by the contract.

The liability to any forfeiture either of the patent right or of the consideration paid for it, was obviously not a necessary result of the terms of the agreement when originally made, but arose from the subsequent acts and omissions of the defendant company which its officers have not attempted to justify or explain. Any apparent hardship upon the defendant arising from such causes and under such circumstances must be presumed to have been in the contemplation of the parties as the direct result of such acts and omissions on the part of the defendant, and be deemed an insufficient cause for refusing a specific performance of the contract unless it appears that the damages for the breach recoverable in an action at law would be a full and adequate remedy. *Nugent* v. *Smith*, 85 Maine, supra; 1 Pom. Eq. Jur. sects. 221, 1401, 1402; Pom. Eq. Rem. Vol. 2, sect. 745.

It is undoubtedly a well settled doctrine that a court of equity will not actively interfere by its decree to enforce a forfeiture. *Birmingham* v. *Lesan*, 77 Maine, 494; while the relief from forfeitures in oral contracts and obligations is a familiar exercise of equity jurisdiction, and a power expressly conferred upon the court by R. S., ch. 79, sect. 6, par. II. The reason for the refusal to enforce forfeitures, says Mr. Pomeroy "is found in the same principle upon which the court acts when it refuses to specifically enforce a contract which is unequal, unjust, or has any inequitable features and incidents." 1 Pom. Eq. Jur. 459. It has been seen, however, that the contract in question in the case at bar is not unequal, unjust, or inequitable in any of its features or incidents, and that

the plaintiff's bill is not one asking for a forfeiture but for a decree to compel the defendant company to perform its agreements according to the terms of the contract.    If such a decree would involve the loss of the payments made on account of the patent, no evidence has been introduced by the defendant showing that upon consideration of all the facts relating to the disposition of its stock, and the conduct of its affairs, such a result would in any respect be contrary to equity.

It is also true, as contended by counsel for the defendant, that an express stipulation in the contract that time shall be of the essence of the agreement, will not be accepted by a court of equity as a final and conclusive determination of the question of specific performance against the manifest equity disclosed by all the facts and circumstances of the case.    *Barnard* v. *Lee,* 97 Mass. 92. But it is obvious that time may be highly essential in certain cases by reason of the peculiar subject matter or object of the contract, and if it satisfactorily appears from the terms of the stipulation and all the circumstances that the parties actually intended to make the time specified an essential element of the contract, and that the consequences of a failure of performance must have been contemplated by the parties at the time of the execution of it, such an express stipulation as to time will be held decisive of the question in a court of equity as well as a court of law.    Pom. Eq. Jur. sect. 1408; Pom. Eq. Rem. vol. 2, sect. 811; *Brown* v. *Vandergrift,* 80 Pa. St. 142.    In the case at bar, time was undoubtedly deemed of great importance by the parties and it is a fact of noteworthy significance that the defendant gives the court no assurance by evidence or answer that it has either the ability or desire to perform its agreements or that justice requires an extension of the time specified for their performance.

Finally the defendant insists that the plaintiff's bill cannot be maintained for a specific performance of a contract to reassign the patent, for the alleged reason that the defendant never made a contract to reassign it.    But it has been seen that the defendant expressly "covenanted and agreed" in the contract that upon failure to perform its agreements, the assignment of the patents should

"terminate and become void," and the plaintiff should thereupon "have, hold, and repossess" the patents as if the assignment had never been made.  This covenant in the contract, upon the facts disclosed in this case, created an obligation in equity on the part of the defendant to execute and deliver the necessary legal instruments to transfer the title to the patents back to the plaintiff corporation.

It is accordingly the opinion of the court that the entry must be,

*Appeal dismissed.   Decree below affirmed with additional costs.*