2008 ME 63

**RAISIN MEMORIAL TRUST**

v.

Sharon CASEY.

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 28, 2007.
Decided: April 1, 2008.

Frank K.N. Chowdry, Esq., Jensen Baird Gardner & Henry, Portland, ME, for Sharon Casey.

David C. King, Esq. F. David Walker, Esq. Rudman & Winchell, Bangor, ME, for the Raisin Memorial Trust.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

SILVER, J.

[¶ 1] Sharon Casey appeals from a judgment entered by the Superior Court (Hancock County, *Hjelm, J.*) granting summary judgment to Raisin Memorial Trust. Raisin filed a complaint against Casey alleging default on a promissory note. Casey here contends that the terms of the promissory note were punitive and that she substantially performed her obligations under the note. We vacate the court's judgment on the first issue and remand for further proceedings on both issues.

## I. BACKGROUND

[¶ 2] At all pertinent times, Fauna G. Stone was the trustee of Raisin. On September 20, 2004, Stone, in her capacity as trustee, accepted a promissory note, executed by Sharon Casey, for $225,000. This loan was meant to enable Casey to purchase Raisin's residential property on Otter Cliff Road in Bar Harbor. As security for this note, Stone accepted a mortgage deed executed by Casey conveying the property.

[¶ 3] The promissory note provided for interest on the loan of six percent per annum and payments of $1348.99 on the twentieth day of each month, with the first payment due on October 20, 2004. The entire principal amount outstanding and accrued interest was to be due in one balloon payment on September 20, 2009. The note also established late charges "of $100.00 per day of any payment not received by the Note Holder within 15 days after the payment is due." The note also stated that "[i]f any payment ... is not paid when due ... the entire principal amount outstanding and accrued interest

thereon shall at once become due and payable at the option of the Note Holder (Acceleration); and the indebtedness shall bear interest at the rate of 12 percent per annum from the date of default." Under the note, payments were to be applied first to the payment of late charges, then to accrued interest, and only then to principal. Prepayment was allowed.

[¶ 4] Raisin asserts that its and Casey's attorneys exchanged several versions of this note prior to reaching agreement on the final version. Raisin also asserts that Casey's attorney never objected to the interest rate, late payment provision, default interest rate, or acceleration clause. Casey disputes both of these claims.

[¶ 5] From October 2004 through June 2005, Stone accepted note payments from Casey as timely. These payments were mailed to Raisin's account with The Vanguard Group. On May 23, 2005, Raisin contacted Vanguard and requested that its account be closed. Raisin notified Casey of this closure by e-mail dated May 25, 2005. Raisin also informed Casey that future note payments should be mailed to Stone at her Boulder, Colorado address. This e-mail was subsequently printed and sent to Casey by first class mail. Casey does not deny that she received this e-mail and letter in a timely fashion. The last payment accepted by Vanguard was posted on June 21, 2005. The events that then took place constitute the basis of this lawsuit.

[¶ 6] On July 19, 2005, Vanguard received a check from Casey for $3000, destined for Raisin's account. Vanguard returned the check to Casey with a letter dated July 28, 2005. The letter informed Casey that Raisin's account had been closed and that no further payments would be accepted into the account. On August 16, 2005, Stone sent a notice to Casey informing her that she was in arrears one payment, and that Casey owed $2448.99. This amount constituted the $1348.99 monthly payment plus $1100 in late charges.[1] Casey admitted that she was notified of this arrearage on or about August 16, 2005. On August 23, 2005, Vanguard received another check from Casey for $1500, again for Raisin's account. Once again, Vanguard returned the check to Casey with a letter dated August 29, 2005, virtually identical in content to its first letter.

[¶ 7] On September 7, 2005, Casey delivered to Raisin at its Stone's Boulder, Colorado address a payment of $8093.94 in satisfaction of the unpaid installments and prepayments of installments for September, October, November, and December 2005. This payment was made in the form of four checks. One check was the $3000 Vanguard check refunded to Casey, another was the $1500 Vanguard check, and another was for $3585.86, made out to Raisin from Casey, with a memo stating "Balance due Oct. Nov. Dec. Payments." A final check was for $8.08, made out to Casey from Stone, with a memo, "Nov. 2004–June 2005 Return for Otter Cliff Road," and endorsed "Sharon Casey Payment for 182 Otter Cliff Road Property."

[¶ 8] Raisin returned all four of these checks to Casey with a letter dated September 14, 2005. Raisin stated that three of the checks were returned because they were not properly made payable to Raisin. The fourth check, for $3585.86, was returned in order, claimed Raisin, to remove any ambiguity or confusion that might

---

1. Late charges for the nonpayment of the July payment began fifteen days after July 20, which was August 4. Eleven days elapsed between August 4 and the date of Stone's communication to Casey, August 16, so the $1100 late charges constitute the $100 per day set forth in the note.

have been caused by the comments entered in the memo section of the check.

[¶ 9] In the September 14 letter, Raisin informed Casey that it was accelerating payment on the note and that as of September 9, 2005, the total amount owing to bring the account current was $6297.98. This amount was comprised of $1348.99 in payments for July and August and $3600 in late charges.[2] Raisin claims that after these checks were returned, Casey made no further attempts to make proper payment.

[¶ 10] On January 30, 2006, Raisin filed a complaint for foreclosure in District Court. In the complaint, it alleged that Casey was in default on the note and had thus breached the conditions of the mortgage. It also alleged that Casey had failed and refused to cure this default by paying the debt due to Raisin. Casey denied all of these allegations and asserted the following pertinent affirmative defenses: (1) the $100 per day late payment provision was invalid or not enforceable; (2) the twelve percent per annum late payment provision was invalid or not enforceable; (3) the acceleration clause in the note was an unlawful penalty and was invalid or not enforceable; (4) Raisin wrongfully refused to accept payments under the terms of the note; and (5) if the court should find that Raisin is entitled to recovery of its costs, such costs should not include those associated with any amount that the court finds to be invalid or not enforceable.

[¶ 11] The case was removed to the Superior Court. On June 27, 2006, Casey moved for summary judgment. On August 4, 2006, Raisin filed a cross-motion for summary judgment. On January 24, 2007, the court granted Raisin's motion and denied Casey's, finding that Casey had defaulted under the terms of the note and that her affirmative defenses were unavailing. The court entered a judgment of foreclosure and found that Casey owed Raisin $261,929.00. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

[¶ 12] We review a grant of summary judgment de novo, considering "the evidence in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 15, 819 A.2d 1014, 1022 (quotation marks omitted). A grant of summary judgment will be affirmed "if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.,* 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. In its opposing statement of material facts, a party must "explicitly admit, deny, or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation." *Doyle v. Dep't of Human Servs.,* 2003 ME 61, ¶ 10, 824 A.2d 48, 52 (citing

---

2. Thirty-six days elapsed between August 4, the date that late charges for the July nonpayment began to accrue, and September 9. Thus, the $3600 late charges represent the $100 per day late charges set forth in the note. Raisin, at this point, was not attempting to collect two sets of $100 per day late charges-one for the July nonpayment and one for the August nonpayment. Whether the note allowed for and Raisin would seek to collect multiple sets of $100 per day late charges is, at this point, unclear, and is of central importance to this case, as is discussed below.

M.R. Civ. P. 56(h)(2)) (quotation marks omitted).

[¶ 13] There is no factual dispute that the parties entered into the note/contract; the terms were negotiated; both parties had counsel; the terms are unambiguous; and Casey breached the terms by being late with several payments. Thus, the motion court correctly enforced the note unless any terms of the note are unenforceable as violative of Maine law. Casey claims that the late charges are just that: violative of Maine law.

B. Enforceability of the Terms of the Note

[¶ 14] We therefore address the late charge provisions in the note. These include primarily the $100 per day late charge, as well as the post-default interest rate of twelve percent and the acceleration clause. The issue is whether these late charges amount to reasonable liquidated damages or a penalty for breach. It is generally accepted that

> [d]amages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

RESTATEMENT (SECOND) OF CONTRACTS § 356(1) (1981).

[¶ 15] We adopted this view long ago. *Dwinel v. Brown*, 54 Me. 468, 469 (1867) (addressing "whether the sum named in the contract ... [was] a penalty or liquidated damages"). If a late charge amounts to liquidated damages, we will affirm it; if it is an excessive or usurious penalty, we will not uphold the provision.

[¶ 16] We have held that to constitute liquidated damages, "an agreement made in advance of breach, fixing the damages thereon" must meet a two-part test. *Interstate Indus. Unif. Rental Serv., Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 921 (Me.1976). First, the damages caused by the breach must be "very difficult to estimate accurately," and second, the amount fixed by the agreement must be "a reasonable forecast of the amount necessary to justly compensate one party for the loss occasioned by" the other's breach. *Pacheco v. Scoblionko*, 532 A.2d 1036, 1038 (Me. 1987); *Interstate Indus.*, 355 A.2d at 921. We "will enforce a good-faith attempt to fix a sum as the equivalent of the prospective injury." *Interstate Indus.*, 355 A.2d at 921. We have also said that the "test is one of reasonableness: if such provisions reflect the anticipated or actual loss caused by the default and are not usurious or excessive so as to constitute a penalty, they will be enforced." *St. Hilaire & Assocs., Inc. v. Harbor Corp.*, 607 A.2d 905, 907 (Me.1992).

[¶ 17] Although we review the enforceability of a provision for liquidated damages as a question of law, *Brignull v. Albert*, 666 A.2d 82, 84 (Me.1995), a determination of whether the two-part test is met is based on facts. Given the record and the Superior Court's opinion in the instant appeal from a grant of summary judgment, we cannot say that there is no genuine issue of material fact that would give rise to a question of whether the two-part test is met.

[¶ 18] To the contrary, whether the late charges were liquidated damages or so excessive as to be unenforceable is open to debate. There needs, therefore, to be a hearing and further fact-finding as to this question. Although we are mindful that both parties were represented by counsel and that the late charges may represent the flip side of the bargain by Casey when the seller allowed her to self-finance, we cannot say that they are enforceable as a

matter of law. We vacate the Superior Court's order as regards the late charges and remand for a hearing consistent with this opinion.

## C. Substantial Performance

■ [¶ 19] Casey acknowledges that, for a time, she was in default of her obligation to pay Raisin on the 20th of each month. By September 7, 2005, Casey had tendered checks to Raisin that covered payments through December 2005, not including any late charges, which Casey claims are unenforceable. If it is held that these late payments are, in fact, unenforceable, the question then becomes whether Casey substantially performed under the terms of the note. The question, in other words, is whether time was of the essence.

■ [¶ 20] The note contains no explicit language stating that time is of the essence. This, however, does not answer the question because a contract that does not contain such language may yet be read to mean that the contracting parties are entitled to strict performance, which is "equivalent to a recitation that time is of the essence." *Frost v. Barrett*, 246 A.2d 198, 201 (Me.1968). Conversely, we will not accept a contract provision that states that time is of the essence "as a final and conclusive determination of the question of specific performance against the manifest equity disclosed by all the facts and circumstances of the case." *Telegraphone Corp. v. Canadian Telegraphone Co.*, 103 Me. 444, 454, 69 A. 767, 771 (1908).

■ [¶ 21] In short, whether time is of the essence in a contract is a matter of fact, *Colbath v. H.B. Stebbins Lumber Co.*, 127 Me. 406, 412, 144 A. 1, 3–4 (1929), and cannot be determined simply by the presence or absence of these magic words in the contract. In the past, we have looked to the nature, circumstances, and purpose of the contract to determine whether time is of the essence. *Dalton v. Callahan*, 122

Me. 178, 187, 119 A. 380, 383 (1923); *Telegraphone Corp.*, 103 Me. at 454, 69 A. at 771; *Hull v. Noble*, 40 Me. 459, 474 (1855); *Jones v. Robbins*, 29 Me. 351, 353 (1849). More recently, we have found such elements in contract provisions providing for temporal deadlines. In *Colbath*, we wrote that "when a promise is expressly conditioned upon an agreed condition to be performed within an expressed time, [we] cannot say that it is immaterial which the parties have made by their contract material." 127 Me. at 412, 144 A. at 4. In *Frost*, we wrote that,

> [a]lthough such specific language does not appear in the contract here, the contract does express that the defendants might treat the agreement as broken by the plaintiff if the plaintiff was unable to convey good and marketable title within sixty days from the date of the contract. . . . We view this as persuasive evidence of the parties' intention that the defendants were entitled to strict performance of the contract and equivalent to a recitation that time is of the essence.

246 A.2d at 201.

[¶ 22] The same persuasive evidence exists here. The mortgagee, having given up a clear sale and having agreed to take back a mortgage, clearly signaled that time was of the essence in demanding immediate late fees, accelerating the entire principal upon any delay, and increasing the rate of the note upon default. Thus, the default, which is undisputed, allows the foreclosure to proceed. The trial court must, upon remand, reexamine what, if any, late fees and escalated interest rates may be imposed on Casey. The parties will be able to argue, and the trial court should determine, whether and to what extent these late fees and escalated interest rates amounted to liquidated damages or excessive and usurious penalties.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.