2011 ME 62

# SISTERS OF CHARITY HEALTH SYSTEM, INC.

v.

## Douglas FARRAGO et al.

Supreme Judicial Court of Maine.

Argued: April 13, 2011.
Decided: May 26, 2011.

Michael R. Poulin, Esq. (orally), Skelton, Taintor & Abbott, Auburn, ME, for Douglas Farrago, Raymond Stone and Carolyn Kase.

L. John Topchik, Esq. (orally), Germani Martemucci Riggle & Hill, Portland, ME,

Kenneth J. Albert III, Esq., Norman, Hanson & DeTroy, LLC, Lewiston, ME, for Sisters of Charity Health System, Inc.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and JABAR, JJ.

JABAR, J.

[¶ 1]   Sisters of Charity Health System, Inc. (SOCHS),[1] a nonprofit integrated healthcare system, sued its former employees—Douglas Farrago, M.D., Raymond Stone, D.O., and Carolyn Kase, D.O.—to enforce restrictive covenants contained in contractual agreements between the doctors and SOCHS.   Following a jury-waived trial, the Superior Court (Androscoggin County, *Delahanty, J.*) enforced the restrictive covenants and ordered each doctor to pay SOCHS $100,000 pursuant to the liquidated damages clauses in their contracts.   On appeal, the doctors contend that (1) the restrictive covenants are unenforceable, (2) their contracts contain an optional buyout clause, not a liquidated damages provision, and (3) even if the contracts contain a liquidated damages provision, it is unreasonable and therefore unenforceable.   We affirm the judgment.

## I.  BACKGROUND

[¶ 2]   As an integrated healthcare system, SOCHS supports and manages several healthcare entities in the Lewiston–Auburn area.   Among these entities are Community Clinical Services, a physician office practice with multiple sites, and St. Mary's Regional Medical Center, a Lewiston hospital.   SOCHS, Community Clinical Services, and St. Mary's are each separate corporations, but SOCHS provides management, human resources, information technology, and financial services for all three.

[¶ 3]   SOCHS maintains one depository account for its healthcare system.   Because Community Clinical Services does not generate enough revenue to cover its costs, SOCHS reallocates funds from St. Mary's to Community Clinical Services. SOCHS also financially assists Community Clinical Services by forgiving its management fees and other expenses, and by transferring money into its account to ensure that Community Clinical Services has cash available.

[¶ 4]   In 1997, Farrago and Stone began practicing at Court Street Family Practice, a branch of Community Clinical Services. In 2000, Kase also joined that practice.   At the time that each doctor began at Court Street, he or she was new to the area and did not have an existing patient base.

[¶ 5] Community Clinical Services leased the services of these doctors from SOCHS. Each doctor had an employment agreement with SOCHS, and these agreements were identical in all material aspects.   For example, pursuant to their employment agreements, all fees or compensation received for the doctors' services belonged to SOCHS and SOCHS paid the doctors' salaries.   Further, in addition to seeing patients at Court Street, the doctors had to be staff members of St. Mary's and regularly serve "on call" periods there.

[¶ 6]   In the event the doctors terminated their employment with SOCHS or were dismissed, a "Limitation of Practice" clause in their contracts forbade them from practicing medicine with Central Maine Healthcare Corporation, its affiliates, or its subsidiaries within a twenty-five-mile radius of 99 Campus Avenue in Lewiston for a period of two years from the date of the termination or dismissal. The geographic and temporal limitations

---

**1.** Sisters of Charity Health System, Inc. has since changed its name, but it has been referred to as SOCHS throughout this litigation to avoid confusion.

could be avoided if the doctor (1) maintained active admitting privileges at St. Mary's and did not maintain staff or admitting privileges at Central Maine Medical Center, (2) obtained the written consent of SOCHS' chief executive officer, or (3) paid SOCHS $100,000, representing SOCHS' "reasonable liquidated damages."[2]

[¶ 7]   Effective December 31, 2006, Farrago, Kase, and Stone terminated their employment with SOCHS and became employees of Central Maine Medical Center. None of the doctors received the written consent of SOCHS' chief executive officer or paid $100,000 in lieu of complying with the limitation-of-practice clause. Following their departure, 1373 patients who had received medical services at Court Street requested a transfer of their medical records to one of these three doctors. The estimated 2006 net revenue per patient at Court Street was $340.23.

[¶ 8]   In 2007, SOCHS filed a complaint alleging that the doctors breached their employment contracts by accepting employment with Central Maine Medical Center, which was within a twenty-five-mile radius of 99 Campus Avenue. SOCHS sought damages but did not seek an injunction.

[¶ 9]   Following a jury-waived trial in March 2009, the court entered judgment in favor of SOCHS. The court concluded that the limitation-of-practice clauses were reasonable restrictive covenants, that each contract contained a liquidated damages provision, and that these provisions were enforceable. Thus, the court ordered each doctor to pay SOCHS $100,000. Following the court's judgment, the doctors filed a motion seeking additional findings of fact to support damages of $100,000 per doctor. The court denied the motion and the doctors filed this timely appeal.

## II.   DISCUSSION

[¶ 10]   The doctors argue that the restrictive covenants are not designed to protect a legitimate business interest of SOCHS, and consequently, the covenants are unenforceable.[3] We review de novo

---

2.   The pertinent section of the contract reads: [The employee] shall not, for himself, or on behalf of any other person, partnership, corporation, association or any other entity, directly or indirectly practice medicine in the employ of or under contract with Central Maine Healthcare Corporation or any of its affiliates or subsidiaries, it or their successors or assigns ... within a radius of Twenty–Five (25) miles of 99 Campus Avenue, Lewiston, Maine, for a period of two (2) years from the date of termination or dismissal. Th[e] practice of medicine under this Agreement shall not include circumstances where physician has and maintains active admitting privileges at St. Mary's Regional Medical Center and maintains no staff or admitting privileges at Central Maine Medical Center. The practice of medicine under contract shall include membership on the staff of Central Maine Medical Center. Notwithstanding the foregoing, Physician may practice medicine in breach of this restrictive covenant during

the term of the Agreement with the written consent of the Employer's Chief Executive Officer.
. . . .
Notwithstanding any provision to the contrary, the Physician may, in lieu of complying with the restrictive covenant set forth above, elect to pay the Employer the sum of One Hundred Thousand Dollars ($100,000), which represents Employer's reasonable liquidated damages, and is not a penalty.

3.   We reject the physicians' contention that SOCHS lacks standing to pursue a claim. Standing to sue requires that, at the commencement of the litigation, the party "has sufficient personal stake in the controversy to obtain judicial resolution of that controversy." *Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1379 (Me.1996). Here, as a party to the doctors' employment contracts, SOCHS has standing to bring a claim seeking damages for the breach of those contracts. *See Stull v. First Am. Title Ins. Co.*, 2000 ME

whether a restrictive covenant is reasonable and therefore enforceable. *Bernier v. Merrill Air Eng'rs,* 2001 ME 17, ¶ 16, 770 A.2d 97, 103. Although reasonableness is a question of law, the inquiry is fact-intensive, and it depends on the specific circumstances of the case: the covenant's duration, the scope of the specified geographic area, and the nature of the interest to be protected. *Brignull v. Albert,* 666 A.2d 82, 84 (Me.1995). A reasonable restrictive covenant will " 'sweep no wider than necessary to protect the business interests in issue,' " *Chapman & Drake v. Harrington,* 545 A.2d 645, 647 (Me.1988) (quoting *Lord v. Lord,* 454 A.2d 830, 834 (Me.1983)), and it will not impose an undue hardship on the employee, *Roy v. Bolduc,* 140 Me. 103, 107, 34 A.2d 479, 480 (1943).

[¶ 11] There is no contention in this case that the restrictive covenants designed by SOCHS are unreasonable by virtue of their duration or geographic scope. Accordingly, our focus is on whether they reasonably sought to protect a legitimate business interest of SOCHS. In undertaking this review, we examine the agreements as the employer "has sought to apply [them] and not as [they] might have been enforced on [their] plain terms." [4] *Chapman & Drake,* 545 A.2d at 647.

[¶ 12] We have previously recognized existing patients and business goodwill as legitimate interests that may be protected through a restrictive covenant. *See Brignull,* 666 A.2d at 84. During the terms of their employment, the doctors had direct contact with Court Street's patients and were in a position to appropriate the good will that SOCHS paid the doctors to help SOCHS develop. *See Chapman & Drake,* 545 A.2d at 647. Because SOCHS was entitled to all revenues generated by the doctors for the patients that they treated at Court Street and covered all operating losses generated by Community Clinical Services, maintaining Court Street's patient base and goodwill were legitimate business interests of SOCHS. Accordingly, we agree with the Superior Court's conclusion that SOCHS established that it had legitimate protectable interests in enforcement of the restrictive covenants.

[¶ 13] We also reject the doctors' contentions regarding the damages provisions of their employment contracts. In the context of these contracts, the court did not err in determining that the provisions setting $100,000 as "liquidated damages" in the event of a doctor's breach were liquidated damages clauses. *See Coastal Ventures v. Alsham Plaza, LLC,* 2010 ME 63, ¶ 26, 1 A.3d 416, 424 (setting forth relevant criteria for contract inter-

---

21, ¶ 11, 745 A.2d 975, 979. The doctors' arguments regarding compensable damages, third party beneficiaries, sufficiency of the evidence, and reverse piercing of the corporate veil do not affect our conclusion that SOCHS has standing.

4. The doctors argue that through the restrictive covenants, SOCHS sought to influence patient referrals for hospital services, which they contend contravenes public policy by violating federal statutes, *see* 42 U.S.C.S. § 1320a–7b(b) (LexisNexis 2008); 42 U.S.C.S. § 1395nn(a) (LexisNexis 2010), and therefore is not a legitimate business interest. However, SOCHS has not requested an injunction or

otherwise sought to enforce the portion of the covenants forbidding the doctors from maintaining "staff or admitting privileges at Central Maine Medical Center." Accordingly, we do not address the doctors' public policy argument. *See Chapman & Drake v. Harrington,* 545 A.2d 645, 647 (Me.1988). Even if we were to conclude that hospital referrals were not a legitimate interest, the employment contracts provide that "any or all ... invalid or unenforceable provisions shall be amended by [the] court so as to cause [the] restrictive covenant to be valid and enforceable to the fullest extent permitted by law."

pretation); *Raisin Mem'l Trust v. Casey,* 2008 ME 63, ¶ 16, 945 A.2d 1211, 1215 (explaining that a liquidated damages clause fixes the sum to be paid in the event of a breach). To be enforceable, a liquidated damages clause must meet a two-part test. *Raisin Mem'l Trust,* 2008 ME 63, ¶ 16, 945 A.2d at 1215. First, it must be "very difficult to estimate [the damages caused by the breach] accurately," and second, the amount fixed in the agreement must be a reasonable approximation of the loss caused by the breach. *Id.* (quotation marks omitted). We review the enforceability of a liquidated damages provision as a question of law, but we review for clear error the factual determinations that the trial court found to satisfy the two-part test. *Id.* ¶ 17, 945 A.2d at 1215.

[¶ 14] We agree with the trial court that the liquidated damages provisions are enforceable. At the time that the parties executed their employment contracts, it was not possible to determine how many patients would leave with their doctor or how much revenue those patients would have generated for Court Street. Considering the competent evidence before the court demonstrating that it takes two to three years for a replacement physician to generate income at a level commensurate with that of an established doctor, and that 1373 patients requested that their medical records be transferred following these doctors' breaches, the amount of damages fixed in the contract was a reasonable approximation of the damages that SOCHS would incur if a doctor left Court Street to practice within a twenty-five-mile radius.

[¶ 15] In sum, the restrictive covenants protected legitimate business interests of SOCHS, and the contracts contained enforceable liquidated damages provisions.

The entry is:

Judgment affirmed.