ENTERED AUG 0 1 2014

STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss.                          CIVIL ACTION
                                        DOCKET NO. CV-2013-168
                                        AMM-PEN-07-28-14

JENNIFER FREESE,

        Plaintiff,

v.                                      **DECISION ON MOTION**
                                        **FOR SUMMARY**
                                        **JUDGMENT**

SUNBURY PRIMARY CARE,
P.A.,

        Defendant.


Plaintiff, Dr. Jennifer Freese, moves for summary judgment under M.R. Civ. P. 56 on her (1) Breach of Employment Contract claim; and (2) Maine Wage Statute claim pursuant to 26 M.R.S. § 626 filed against Defendant, Sunbury Primary Care, P.A. After consideration of the Parties' respective arguments and the summary judgment record, the Court grants summary judgment insofar as it finds that Sunbury breached the employment contract as a matter of law, but it denies summary judgment insofar as the measure of damages for that breach remains a genuine issue. Both parties waived oral argument.

## BACKGROUND

The salient facts with respect to the motion for summary judgment are as follows:

Dr. Freese was employed as a physician with Defendant Sunbury Primary Care, P.A. ("Sunbury") beginning November 26, 2008. The relevant employment agreement was modified by addendum effective February 2, 2012, setting forth an adjusted base salary of $157,599.92 beginning in 2013. By all accounts, the employment relationship was positive and Dr. Freese was a valued employee. However, beginning in 2013, Sunbury contends that it began to suffer from financial hardships. Sunbury entered into an asset sale agreement with Eastern Maine Medical Center and notified Dr. Freese by e-mail in early September of 2013 that her employment with the company would terminate for cause effective September 30, 2013. The e-mail also stated that in the event that the termination was not "for cause," the letter would serve as notification of without cause termination.

The employment agreement between Sunbury and Dr. Freese provided a list of "for cause" reasons that Dr. Freese could be terminated, as well a provision concerning "without cause" termination.

Dr. Freese contends that because Sunbury did not provide her with six months notice of her termination it breached the employment agreement. She further contends

1

that the requirement in Section 13(a) that Sunbury pay her the base salary then in effect for the entire six month period if she is suspended constitutes a liquidation damages clause in the event that she is terminated without six months notice. Finally, she argues that the money allegedly owed her under Section 13(a) constitutes "earned wages" for purposes of the Maine Wage Statute. Sunbury counters that it did not breach the agreement because the termination was for cause due to business difficulties making its continued operation impossible. It also contends that Section 13(a) is not a liquidation damages clause and that the Court must look to Dr. Freese's actual damages. Finally, it argues that money Dr. Freese is due under Section 13(a), if any, does not qualify as "earned wages" under the wage statute.

## ANALYSIS

1. Standard of Review

In Maine, summary judgment is appropriate when review of the parties' statements of material facts and the record evidence to which the statements refer, considered in a light most favorable to the non-moving party, demonstrate that there is "no genuine issue of material fact [] in dispute," thereby meriting judgment as a matter of law for the moving party. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 2012 Me. LEXIS 103, *11 (Aug. 2, 2012); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is *material* if it is "one that can affect the outcome of the case," and a fact issue is *genuine* "when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 2012 ME. LEXIS at *11 (Aug. 2, 2012). In assessing ambiguities regarding the existence of a genuine issue of material fact, the Court views the summary judgment record in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. *See Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶¶ 11-12, 974 A.2d 276.

2. Breach of Contract

First, Dr. Freese asserts that Sunbury breached the employment contract she had with it by failing to provide her with 60-days of notice as was required by Section 13(a) of that agreement, entitled, "Termination Without Cause," and by failing to pay her six months salary for suspending her employment without adequate notice. Section 13(a) states:

> Termination Without Cause. Either CORPORATION or PHYSICIAN may terminate this agreement at any time by giving not less than six (6) months advance written notice to the other party specifying the date of termination. CORPORATION reserves the right to suspend PHYSICIAN'S employment duties hereunder for all or part of said six (6) months provided that CORPORATION continues to pay PHYSICIAN the

2

base salary then in effect for the entire six (6) month period and accepts responsibility for PHYSICIAN'S share of reporting endorsement (tail insurance) and recruitment fee costs. Notwithstanding the foregoing, CORPORATION may terminate this Agreement for cause in accordance with subsection (c) below at any time during said six (6) month period.

(Contract ¶ 13(a).)

In contrast, Sunbury contends that the termination was "for cause" pursuant to Section 13(c) of the employment agreement. Section 13(c) of the employment agreement states:

> Termination by CORPORATION For Cause. CORPORATION may terminate PHYSICIAN'S employment for cause at any time upon written notice. TO terminate PHYSICIAN's employment for cause, CORPORATION shall give written notice to PHYSICIAN specifying the grounds for discharge. PHYSICIAN'S employment shall be terminated as of the date she receives said notice. Cause for termination **shall be limited to**:
> (i)   failure of PHYSICIAN to obtain license to practice medicine in the State of Maine
> (ii)  loss or suspension of PHYSICIAN'S license to practice medicine in the State of Maine
> (iii) cancellation of the professional liability insurance ...;
> (iv)  indictment of PHYSICIAN for a crime ...;
> (v)   dishonesty of PHYSICIAN or other material breach of trust which has a material adverse effect on CORPORATION;
> (vi)  willful or reckless disregard by PHYSICIAN of practice parameters, standards of professional care, or applicable rules of professional ethics;
> (vii) willful or reckless disregard by PHYSICIAN of her employment duties; or
> (viii) repeated negligence by PHYSICIAN in providing or failing to provide professional services on behalf of CORPORATION

(emphasis added).

Moreover, section 14(a) of the employment agreement is a non-competition provision. Then, section 14(c) of the employment agreement goes on to state:

> PHYSICIAN agrees that her breach of section 14(a) would significantly hurt Sunbury, and that any calculation of damages would be inherently difficult, time consuming, and incomplete as a remedy. Accordingly, if PHYSICIAN breaches section 14(a), she shall promptly pay Sunbury the sum of one hundred and thirty-nine thousand one hundred and seven dollars($139, 107). PHYSICIAN agrees that this payment is a fair and reasonable estimate of the harm her breach would cause Sunbury, and is not a penalty. Alternatively, PHYSICIAN can simply buy out her responsibilities under section 14(a) by paying Sunbury the same amount.

3

When interpreting contracts, Courts first determine whether a contractual provision is ambiguous. *Reliance National Indem. V. Knowles Industrial Services, Corp.*, 868 A.2d 220 (Me. 2005). Interpretation of an unambiguous contractual provision is a question of law. *Id.*

A. Termination "for Cause"

The Court first addresses Sunbury's claim that the termination was "for cause" due to Sunbury's claimed business difficulties. The Court concludes that neither the express language of the contract nor the implicit meaning of "for cause" supports Sunbury's position. As to the express terms of the contract, the "for cause" section, Section 13(c), provides a comprehensive list of reasons that the employment relationship could be terminated for cause. This list does not include financial or business reasons as a basis for "for cause termination."

Nor does Maine law recognize financial difficulties as an implied "for cause" reason for termination. In *Wilde v. Houlton Regional Hospital*, the Law Court held that "[a]bsent a clear indication to the contrary, a 'dismissal for cause' provision refers only to disciplinary discharge." 537 A.2d 1137, 1138 (Me. 1988).

Thus, neither the express nor implied meaning of "for cause" includes discharge for financial or legitimate business reasons. This contractual provision is unambiguous. As a result, the Court concludes – as a matter of law - that Dr. Freese's termination was not "for cause."

B. Termination "Without Cause"

Sunbury's avenue to terminate Dr. Freese for financial or legitimate business reasons is therefore limited to Section 13(a), the "without cause" provision of the employment contract. Section 13(a) serves as a limitation on Sunbury's common law right to terminate Dr. Freese at will. It restricts Sunbury's ability to terminate Dr. Freese "without cause" by requiring that Sunbury provide her with six-months notice. The contract language continues that Sunbury may suspend Dr. Freese's employment duties within this required six-month notice period provided that it continues to pay her her base salary for that entire six-month period.

In *Wilde v. Houlton Regional Hospital*, 537 A.2d 1137, 1138 (Me. 1988), the Law Court analyzed an employment contract that limited the employer's right to terminate at will only through a single "for cause" clause. The Law Court held that the "for cause" clause referred to disciplinary discharge, and that absent some other contractual limitation, the employer could discharge the employee on an at will basis for financial and other legitimate business reasons without running afoul of the "for cause" clause. *Id.* In other words, the at-will termination was not a "for cause" termination and since nothing in the contract limited "without cause" termination the employer was free to terminate the employees at will. *See Id.* In contrast, the contract in this case limits the

4

employer's right to terminate both through (1) a "for cause" clause and (2) a "without cause" clause. The "without cause" clause of Section 13(a) is just the type of "other contractual limitation" that *Wilde* envisioned.[1]

The Court concludes as a matter of law that Sunbury was required by contract to provide Dr. Freese with six-months notice of her termination under Section 13(a) because the termination was not for cause under Section 13(c). It is undisputed that Sunbury terminated Dr. Freese without giving her the full six-month notice in this case. Because Sunbury's breach is clear under the unambiguous language of the contract, the Court determines that Sunbury breached the employment agreement with respect to failing to provide Dr. Freese six-months notice prior to the termination of the employment agreement.

Further, in paragraph 5(b) of the employment agreement, the agreement provides that:

> Coverage After Employment Ceases. In the event PHYSICIAN ceases to be employed by CORPORATION for whatever reason, then on behalf of PHYSICIAN, CORPORATION shall procure a reporting endorsement (tail insurance) with limits and coverage equal to the professional liability insurance previously provided by CORPORATION.

Paragraph 5(c) of the employment agreement further provides, in part, that:
> In the event the CORPORATION initiates termination pursuant to paragraph 14, sub-paragraph (a), Termination without Cause, CORPORATION shall be responsible for the full cost of the reporting endorsement (tail insurance).

These contractual provisions are unambiguous, and the Court finds – as a matter of law– that Sunbury breached these contractual provisions by not procuring and paying for Dr. Freese's tail insurance.

## C. Liquidated Damages vs. Actual Damages

The Court next turns to the question of damages.

The parties disagree whether section 13(a) of the employment contract contains a liquidated damages clause applicable in this case. Sunbury contends that Dr. Freese did not suffer actual damages in the amount claimed and in the alternative that she did not mitigate her damages. As a counterpoint to this argument, Dr. Freese asserts that Section

---

[1] Sunbury also argues that because the business was no longer economically viable, its performance under the contract was obviated by the doctrine of impossibility of performance. Sunbury cites to the Restatement (Second) of Contracts, § 261 (1981) to support this proposition. However, as noted by Dr. Freese, Comment B to § 261 makes clear that the discontinuance of business due to market conditions or other financial constraints does not eliminate a party's contractual obligations under an employment contract. In such cases where the employer has failed to eliminate its obligations through a clause in the employment contract, the employee is entitled, like any other creditor, to make a claim for what is owed at bankruptcy or otherwise.

5

13(a) is a liquidated damages clause and that therefore actual damages and mitigation of damages are irrelevant.

A liquidated damages clause establishes a fixed sum to be paid upon the breach of a contract. *See Raisin Mem'l Trust v. Casey*, 2008 ME 63, ¶ 16, 945 A.2d 1211. Whether a contract clause constitutes a liquidated damages clause is a question of law. *See Sisters of Charity Health Sys., v. Farrago*, 2011 ME 62, ¶ 13, 21 A.3d 110.

The Court is to "ascertain the intention of the parties by looking at the Agreement itself, taking into consideration the subject matter, nature and purpose of the parties, as well as the object to be accomplished". *Waltman & Co. v. Leavett*, 1999 ME 4, 722 A.2d 862; *Coastal Ventures v. Alsham Plaza LLC.*, 2010 ME 63, 1 A.3d 416 (A contract is to be interpreted to give effect to the intention of the parties as reflected in the written agreement, taking into consideration the subject matter, nature and purpose of the parties, as well as the object to be accomplished).

To determine whether Section 13(a) constitutes a liquidated damages clause the Court first looks to the plain language of the agreement. The language does not use the words, "liquidated damages," but states:

> Either CORPORATION or PHYSICIAN may terminate this agreement at any time by giving not less than six (6) months advance written notice to the other party specifying the date of termination. CORPORATION reserves the right to suspend PHYSICIAN'S employment duties hereunder for all or part of said six (6) months *provided that CORPORATION continues to pay PHYSICIAN the base salary then in effect for the entire six (6) month period and accepts responsibility for PHYSICIAN'S share of reporting endorsement (tail insurance) and recruitment fee costs.*

(Contract, ¶ 13(a).)(emphasis added). The first sentence in the section requires that six-months notice be given for a "without cause" termination. The second sentence permits the company to "suspend [the] physician's employment duties" during that six-month period so long as it continues to pay her for that entire six-month period.

There is no question that Dr. Freese's employment was terminated without six-months notice. While the contract is unambiguous that Dr. Freese's termination was without cause, it is ambiguous with respect to damages. *See Coastal Ventures* (a contractual provision is ambiguous if it is reasonably possible to give the provision at least two different meanings). Whether paragraph 13(a) of the Employment Agreement contains a liquidated damages provision applicable to breach of the notice provision is ambiguous. Moreover, whether Dr. Freese's employment duties were necessarily "suspended" within the context of section 13(a) when her employment was terminated might be open to argument. However, Dr. Freese admitted that she was never suspended. Pl. Resp. to Def. S.M.F. ¶ 10. Finally, even if paragraph 13(a) of the Employment Agreement

6

contained a liquidated damages provision applicable to breach of the notice provision, the Court could not determine, as a matter of law, that it would be very difficult to accurately estimate damages caused by a breach and/or that the amount recited is reasonable. See *Sisters of Charity, Raisin Mem'l Trust.* Therefore, the Court does not find, as a matter of law, what, if any, damages are to be awarded to Dr. Freese for Sunbury's breach of the Employment Agreement.

3. Unpaid Wages

Maine's Wage Statute, 26 M.R.S. § 626, requires that employers pay employees their wages within a specified time frame after the end of their employment. The amount, if any, to which Dr. Freese may be entitled under § 626 will await determination of the underlying damage issue.

The entry is:

1. Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

2. Summary Judgment is granted for Plaintiff and against Defendant Sunbury to the extent the Court determines that Sunbury breached the Employment Agreement by failing to provide Dr. Freese with 6-months notice of the termination of the Agreement and by failing to procure and pay for her tail insurance. Plaintiff's Motion for Summary Judgment is otherwise denied.

3. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: July **28**, 2014

Ann M. Murray, Justice
Maine Superior Court

7

JENNIFER FREESE DO   VS SUNBURY PRIMARY CARE PA
UTN:AOCSsr   -2013-0096042                    CASE #:BANSC-CV-2013-00168
--------------------------------------------------------------------------------

| SEQ | TITLE | NAME | | DOB | ATTY |
|-----|-------|------|---|-----|------|
| 001 | PL | JENNIFER FREESE DO | David Kreisler | / / | T |
| 002 | DEF | SUNBURY PRIMARY CARE PA | Michael Duddy | | T |