2009 ME 51

**Paul DRAGOMIR**

v.

**SPRING HARBOR HOSPITAL et al.**

Supreme Judicial Court of Maine.

Argued: May 15, 2008.

Decided: May 14, 2009.

Sheldon J. Tepler, Esq., Christian J. Lewis, Esq. (orally), Hardy, Wolf & Downing, P.A., Lewiston, for Paul Dragomir.

Mark G. Lavoie, Esq., Christopher C. Taintor Esq. (orally), Norman, Hanson & Detroy, LLC, Portland, for Spring Harbor Hospital.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.*

Majority: SAUFLEY, C.J., and LEVY, SILVER, and MEAD, JJ.

Dissent: CLIFFORD, and ALEXANDER, JJ.

SILVER, J.

[¶ 1] Paul Dragomir appeals from two orders entered in the Superior Court (Cumberland County, *Cole, J.*) in favor of Spring Harbor Hospital. In one order, the court granted Spring Harbor's motion for partial summary judgment on Dragomir's claim of vicarious liability. In the second order, the court granted Spring

* Gorman, J., sat at oral argument but did not participate in the development of this opinion.

Harbor's motion to dismiss Dragomir's claims of negligent hiring and negligent supervision. Both claims arose out of the relationship that Dragomir had with Eric Richardson, a social worker employed by Spring Harbor who treated Dragomir. Dragomir does not appeal the judgment against him on his claim of negligent hiring.[1] We affirm the Superior Court's order as to vicarious liability, and we vacate its order as to negligent supervision.

## I. FACTS AND PROCEDURE

[¶ 2] The following facts were appropriately before the Superior Court, and we view them in the light most favorable to Dragomir. *See Raisin Mem'l Trust v. Casey,* 2008 ME 63, ¶ 12, 945 A.2d 1211, 1214; *Plimpton v. Gerrard,* 668 A.2d 882, 885 (Me.1995). In April 2000, Paul Dragomir was admitted to Spring Harbor for treatment of a mental illness and drug and alcohol abuse. Eric Richardson was employed at Spring Harbor as a social worker. Richardson ran the intensive outpatient program at Spring Harbor and, beginning in April 2000, he provided therapy to Dragomir—first as an inpatient and then as an outpatient. As an outpatient, Dragomir saw Richardson for therapy approximately once per week until treatment terminated in January 2001.

[¶ 3] In May 2000, Dragomir and Richardson began a sexual relationship, which lasted until July 2001. During this time, Richardson supplied Dragomir with illegal drugs and alcohol and encouraged Dragomir on one occasion to drive a motor vehicle while consuming alcohol. All social and sexual encounters between Dragomir and Richardson occurred off hospital premises in Richardson's home or elsewhere, with the exception of one very brief sexual act in Richardson's office.

[¶ 4] Dragomir and Richardson went to great lengths to keep their relationship secret because they knew that Richardson would immediately lose his job if they were discovered. For example, on at least one occasion, Richardson urged Dragomir to keep driving so as to avoid being seen by someone Richardson knew. Richardson also told Dragomir that he would lose his clinical social work license and that his career would "go down the drain" if anyone learned of their relationship. In July 2001, Dragomir informed Spring Harbor officials of his relationship with Richardson. When Spring Harbor confronted Richardson with this information, Richardson resigned. He eventually pleaded guilty to gross sexual assault with a mental health patient in the course of treatment (Class C), 17–A M.R.S. § 253(2)(I) (2008), and was incarcerated.

[¶ 5] Prior to being hired by Spring Harbor, Richardson had been investigated for theft and using patient records to file false insurance claims. He subsequently signed a consent agreement with the State Board of Social Worker Licensing and the Attorney General, in which he admitted these charges. Dragomir claims that the hospital knew of these charges when it hired Richardson, or that it would have known about them if it had adequately explored Richardson's background, including his state licensure records.

[¶ 6] On September 27, 2002, pursuant to the Maine Health Security Act, *see* 24

---

1. Although Dragomir included the issue of negligent hiring in his notice of appeal, as well as in the issue statement contained in his brief, he did not provide any case law or analysis on the issue, in addition, Dragomir's attorney abandoned the issue at oral argu-ment. Because Dragomir has effectively withdrawn his argument as to negligent hiring, we do not consider the issue on appeal. *See Wildes v. Pens Unlimited Co.,* 389 A.2d 837, 841 n. 6 (Me.1978).

M.R.S. § 2853 (2008), Dragomir filed a notice of claim against Richardson and Spring Harbor. He alleged the following: Richardson was an agent, servant, or employee of Spring Harbor; Richardson's treatment of Dragomir and Spring Harbor's supervision of Richardson constituted shocking deviations from the applicable standard of care; Spring Harbor did not explore satisfactorily Richardson's background prior to hiring him; Spring Harbor's staff did not read one another's notes, which was indicative of unacceptably poor training and supervision; Spring Harbor did not recognize that Dragomir's substance abuse issues were so pivotal to the success or failure of his treatment; Spring Harbor did not notice or inquire into the inconsistencies in Dragomir's daily check-ins, which would have pointed to the destructive relationship initiated and nurtured by Richardson; and that timely and thoughtful investigation into Dragomir's rapidly increasing drug abuse would have revealed the abuse perpetrated by Richardson on Dragomir and would have terminated the unhealthy relationship between Richardson and Dragomir much earlier.

[¶ 7] We next address the procedural history of this case with respect to Spring Harbor only. Dragomir's case against Richardson has been stayed pending this appeal. Spring Harbor filed a motion for partial summary judgment on the issue of vicarious liability. In its order on the motion, the court noted that Maine applies a traditional test, pursuant to Restatement (Second) of Agency § 228 (1958), for deciding whether employee conduct falls within the scope of employment for purposes of determining whether the employer is vicariously liable for the actions of the employee, and it found that Dragomir did not satisfy the necessary criteria. The court therefore granted Spring Harbor's motion. Dragomir appealed the court's decision to

us, and on October 13, 2004, we dismissed it as interlocutory.

[¶ 8] Spring Harbor subsequently filed a motion to dismiss Dragomir's claims for the negligent hiring and negligent supervision of Richardson, and the Superior Court granted the motion. In its order, the Superior Court noted that, in Maine, if a plaintiff asserts facts with sufficient particularity such that a "special relationship" between plaintiff and defendant is established, an action for negligent supervision may be maintained. However, the court found that Dragomir had not asserted facts with sufficient particularity to establish a special relationship.

[¶ 9] On December 7, 2007, Dragomir filed an unopposed motion for entry of final judgment as to Spring Harbor, and he requested that the proceedings against Richardson be stayed pending this appeal. The Superior Court granted Dragomir's motion to stay his claims against Richardson and, pursuant to M.R. Civ. P. 54(b), entered final judgment on all claims in favor of Spring Harbor. This appeal followed.

## II. DISCUSSION

[¶ 10] We now review the Superior Court's orders regarding Dragomir's claims against Spring Harbor for vicarious liability and negligent supervision.

### A. Vicarious Liability

[¶ 11] "We review a grant of summary judgment de novo, considering the evidence in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Raisin Mem'l Trust v. Casey*, 2008 ME 63, ¶ 12, 945 A.2d 1211, 1214 (quotation marks omitted).

[¶ 12] "Maine applies the Restatement (Second) of Agency to determine the limits of imposing vicarious liability on an employer." *Mahar v. StoneWood Transp.,* 2003 ME 63, ¶ 13, 823 A.2d 540, 544. Specifically, an employer may be liable for the actions of its employee if the actions were taken in the "scope of employment." *Id.* The Restatement (Second) of Agency § 228 provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits;
> >
> > (c) it is actuated, at least in part, by a purpose to serve the master, and
> >
> > (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

[¶ 13] Richardson's sexual relations with Dragomir did, on one occasion, occur within the authorized time and space limits of Dragomir's treatment. However, the incident was very brief, and the remainder of Richardson and Dragomir's sexual relationship occurred off premises. Therefore, the sexual acts did not occur substantially within the authorized time and space limits of Dragomir's treatment. *See id.* § 228(1)(b). In addition, other criteria set forth in section 228 have not been satisfied. Dragomir was employed as a social worker, and his sexual relationship with Dragomir was not the kind of conduct he was employed to perform. *See id.* § 228(1)(a). Furthermore, Richardson's actions were entirely different in kind from that authorized by Spring Harbor. *See id.* § 228(2).

[¶ 14] Dragomir contends, however, that the Superior Court failed to address his argument that the therapy itself was negligent because it fell below the appropriate standard of care, and that the hospital could be vicariously liable with respect to the negligent treatment. However, Dragomir's claims regarding negligent treatment all relate back to the sexual relationship. Dragomir does not establish a claim for negligent treatment that is separate and apart from his claims concerning the sexual relationship with Richardson. Spring Harbor is therefore not vicariously liable for Richardson's negligent treatment of Dragomir. We affirm the Superior Court's order granting summary judgment to Spring Harbor as to Dragomir's claim of vicarious liability.

## B.  Negligent Supervision

[¶ 15] When we review a judgment granting a motion to dismiss, we view the complaint[2] in the light most favorable to the plaintiff, and treat the material allegations of the complaint as admitted to determine whether it "alleges the elements of a cause of action against the defendant or alleges facts that could entitle the plaintiff to relief under some legal

---

**2.** Medical malpractice actions in Maine are commenced with a notice of claim, 24 M.R.S. § 2903 (2008), which is presented to a prelitigation panel before it reaches the court system, 24 M.R.S. § 2852(2) (2008). Pursuant to 24 M.R.S. § 2853(5) (2008), the parties may agree, as they did here, to resolve preliminary issues in Superior Court or to bypass the panel altogether and commence a lawsuit. Because a motion to dismiss was filed by Spring Harbor as part of the Superior Court proceedings, we treat Dragomir's notice of claim as a complaint for procedural purposes. *See Choroszy v. Tso,* 647 A.2d 803, 805 n. 1 (Me.1994).

theory." *Plimpton,* 668 A.2d at 885. For a court to properly dismiss a claim for failure to state a cause of action, it must appear "beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Id.*

[¶ 16] In *Fortin v. Roman Catholic Bishop of Portland,* we recognized the tort of negligent supervision. 2005 ME 57, ¶ 39, 871 A.2d 1208, 1222. We held that "if a plaintiff asserts the existence of facts that, if proven, establish a special relationship with a defendant in accordance with section 315(b) of the Restatement (Second) of Torts, an action may be maintained against the defendant for negligent supervision liability in accordance with section 317 of the Restatement." *Id.* Section 315(b) provides that there is a duty to control the conduct of a third person to prevent him from causing harm to another if "a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315(b) (1965). If a special relationship exists pursuant to section 315(b), a plaintiff is then entitled to assert a claim for negligent supervision pursuant to section 317, which provides:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using the chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965).

1. Special Relationship—Restatement (Second) of Torts § 315(b)

[¶ 17] Dragomir was thus required to assert the existence of facts that, if proven, establish a special relationship between him and Spring Harbor. The notice of claim, viewed in its most favorable light, establishes that Dragomir was admitted to Spring Harbor in April 2000 as an inpatient for treatment of schizophrenia, and that he was also abusing drugs and alcohol at the time. His substance abuse was connected to a prior sexual victimization. Upon his discharge as an inpatient, he was admitted to the hospital's intensive outpatient program.

[¶ 18] We held in *Fortin* that the particular fiduciary relationship demonstrated by the plaintiff qualified as a "special relationship" pursuant to section 315(b), and, in doing so, we focused on the "great disparity of position and influence between the parties." *Fortin,* 2005 ME 57, ¶¶ 26, 34, 871 A.2d at 1218, 1220 (quotation marks omitted). We take this opportunity to clarify the law with respect to the difference between fiduciary relationships and special relationships. Section 315(b) uses the term "special relation" in a narrower sense than it is traditionally used. A comment to section 315(b) expressly confines the term "special relation," as used in that section, to those relationships discussed in Restatement (Second) of Torts §§ 314A, 320 (1965). Restatement § 315 cmt. c. Specifically, the term is limited to four kinds of relationships: (1) common carri-

ers and their passengers; (2) innkeepers and their guests; (3) possessors of land and members of the public who are their invitees; and (4) those who are required by law to take physical custody of another or who voluntarily do so, "such as to deprive the other of his normal opportunities for protection." Restatement § 314A.

[¶ 19] In *Fortin*, we recognized that a fiduciary relationship qualified as an additional means of demonstrating a "special relation" pursuant to section 315(b). *See Fortin*, 2005 ME 57, ¶¶ 34, 37, 871 A.2d at 1220, 1222. We did not, nor do we now, expressly state that any fiduciary relationship would constitute a "special relation" for purposes of section 315(b). Rather, we recognized that those fiduciary relationships in which there exists a "great disparity of position and influence between the parties" would qualify as a "special relation" pursuant to section 315(b). *Fortin*, 2005 ME 57, ¶ 34, 37, 871 A.2d at 1220, 1222 (quotation marks omitted). Such a determination must be made on a case-by-case basis, unless the nature of a given relationship is such that there is always certain to be a great disparity of position and influence.

[¶ 20] Other courts have found the existence of a special relationship between a patient and a hospital in cases involving highly vulnerable patients who were sexually abused while receiving mental health treatment. *See Bodin v. Vagshenian*, 462 F.3d 481, 489 (5th Cir.2006) (finding, in a case where a psychiatrist sexually assaulted his patients, that, under Texas law, a "provider of psychological services has a heightened duty of care to its patients because of their vulnerability and the resulting special relationship" (citing *Porter v. Nemir*, 900 S.W.2d 376 (Tex.App.1995))); *Douglass v. Salem Cmty. Hosp.*, 153 Ohio App.3d 350, 794 N.E.2d 107, 121–22 (2003) (finding a special relationship as to a sev-

en-year-old boy abused by a hospital's social services counselor).

[¶ 21] A hospital's relationship to a psychiatric patient suffering from and being treated for a mental illness or a vulnerable psychological condition, especially one as serious as schizophrenia, which in this case required inpatient hospitalization followed by intensive outpatient treatment, is certainly one that is marked by a "great disparity of position and influence between the parties." *Fortin*, 2005 ME 57, ¶ 34, 871 A.2d at 1220 (quotation marks omitted). Although the record must be further developed, Dragomir alleges that he was a vulnerable, impaired patient of a mental health hospital, and that he was unable to protect himself from a hospital employee. Dragomir has alleged facts that, if proven, would constitute a special relationship pursuant to section 315(b) and our holding in *Fortin*. His allegations are therefore sufficient to survive a motion to dismiss.

2. Negligent Supervision—Restatement (Second) of Torts § 317

[¶ 22] The Superior Court did not reach Dragomir's negligent supervision claim because it concluded that he did not allege facts sufficient to prove he had a special relationship with Spring Harbor. However, because we conclude otherwise, the Superior Court will be tasked with reconsidering Dragomir's negligent supervision claim if he can successfully prove, according to the facts he has alleged, that a special relationship existed. Although our holding permits Dragomir to prove a special relationship in order to assert a claim of negligent supervision, we do not here determine whether such a claim will succeed.

[¶ 23] However, if Dragomir does succeed in demonstrating a special rela-

tionship on remand, he must next prove that Spring Harbor is liable for negligent supervision, a claim that necessarily requires Spring Harbor to have foreseen the need to control its employee. *See, e.g., Braswell v. Braswell,* 330 N.C. 363, 410 S.E.2d 897, 903 (1991) (noting that a plaintiff must prove that "the master has been negligent in employing or retaining such incompetent servant, *after knowledge of the fact, either actual or constructive*" (emphasis added) (quotation marks omitted)); *Dempsey v. Walso Bureau, Inc.,* 431 Pa. 562, 246 A.2d 418, 422–23 (1968) (holding that employer could not be liable for negligent supervision of employee who assaulted another individual because employer did not know or have reason to know of employee's prior record showing a propensity for violence); *see also* Restatement (Second) of Torts § 317, Reporter's Notes (1966) (stating that, to prove liability on the part of the master, "[i]t is necessary to show that the master knew of the practices, and that he did not take the appropriate steps to stop them; or at least that he reasonably should have discovered them").

[¶ 24]   Therefore, the central issues on remand will be whether Dragomir can prove facts sufficient to demonstrate that a special relationship existed between him and Spring Harbor, and whether Dragomir can further prove, among other things, that Richardson's actions were foreseeable to the hospital and that it failed to supervise Richardson accordingly.

The entry is:

Partial summary judgment as to vicarious liability affirmed. Motion to dismiss as to negligent supervision vacated. Remanded for further proceedings consistent with this opinion.

ALEXANDER, J., with whom CLIFFORD, J., joins, dissenting.

[¶ 25]   I respectfully dissent.

[¶ 26]   For centuries, our common law tradition has recognized that businesses, professions, and individuals may be held responsible, in damages actions, for acts committed by employees or agents in the course and scope of their employment. *See DiCentes v. Michaud,* 1998 ME 227, ¶ 11, 719 A.2d 509, 513; *Page v. Boone's Transp., Ltd.,* 1998 ME 105, ¶ 15, 710 A.2d 256, 257. This responsibility extends to improper acts by individuals who are apparent agents of a principal, *see Steelstone Indus., Inc. v. North Ridge Ltd. P'ship,* 1999 ME 132, ¶ 12–13, 735 A.2d 980, 983; *Williams v. Inverness Corp.,* 664 A.2d 1244, 1246–47 (Me.1995), and, in some circumstances, extends to individuals who are apparently independent contractors, *see Legassie v. Bangor Publ'g Co.,* 1999 ME 180, ¶¶ 18–19, 741 A.2d 442, 447–48.

[¶ 27]   Throughout our legal history, and until 2005, while recognizing the responsibility of businesses, professions, and individuals for the acts of their employees and agents, we limited that responsibility to acts done in the course and scope of employment. *See, e.g., Mahar v. StoneWood Transp.,* 2003 ME 63, ¶ 17, 823 A.2d 540, 545 (holding that an employer is not responsible for assault and other illegal acts committed by an employee while driving a route for his employer because the illegal acts were outside the scope of employment).

[¶ 28]   We had regularly turned aside efforts to extend the responsibility of businesses, professions, and individuals to include improper acts by their employees and agents that occurred outside the course and scope of their employment or agency. *See id.*; *Korhonen v. Allstate Ins. Co.,* 2003 ME 77, ¶ 12 n. 4, 827 A.2d 833, 837; *Napieralski v. Unity Church of Greater Portland,* 2002 ME 108, ¶¶ 6–11,

802 A.2d 391, 392–93; *Hinkley v. Penobscot Valley Hosp.*, 2002 ME 70, ¶ 16, 794 A.2d 643, 647; *Swanson v. Roman Catholic Bishop of Portland*, 1997 ME 63, ¶ 9, 692 A.2d 441, 443–44. This limitation on liability extended even to illegal acts, such as assaults, committed while serving the employer, because we viewed such acts as being outside the scope of the employment relationship. *Mahar*, 2003 ME 63, ¶¶ 12–17, 823 A.2d at 544–45.

[¶ 29] In 2005 we created a narrow, carefully circumscribed exception to the common law rule, holding that an employer may be liable for the acts of an employee outside the course and scope of the employment, but only if a plaintiff could demonstrate *both* fiduciary duty and foreseeability. *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶¶ 31–39, 871 A.2d 1208, 1219–22. That exception to the common law rule could apply only when a plaintiff could demonstrate that: (1) the employer had a fiduciary duty towards the plaintiff, and (2) the employer knew or should have known that the employee might engage in improper acts, outside the course and scope of employment, that could injure the plaintiff. *Id.* ¶ 38, 871 A.2d at 1222. We premised that holding on the theory of negligent supervision, carefully limited to when there was a fiduciary relationship or responsibility toward the plaintiff in a situation where the employer "knew or should have known of the risk of harm" to the plaintiff. *Id.* We also emphasized that "we need not and, therefore, do not address in this opinion whether negligent supervision liability may be imposed in other circumstances." *Id.* ¶ 39, 871 A.2d at 1222.

[¶ 30] Despite the narrowly circumscribed negligent supervision cause of action adopted in *Fortin*, I dissented, expressing concern that the reasoning of the opinion would open the door to a wide range of efforts to make businesses, professions, and individuals responsible for employees' improper acts outside the course and scope of the employment or agency. *Id.* ¶¶ 77–97, 871 A.2d at 1232–37 (Alexander, J., dissenting).

[¶ 31] Today, the prediction stated in the dissent four years ago comes true. The Court today fundamentally alters and dramatically expands business, professional, and individual responsibility for improper acts of employees and agents occurring outside of the course and scope of the employment or agency. With this opinion, businesses, professions, and individuals are at risk of suit and exposed to damages payments for acts by employees after hours and away from the employer's premises that have nothing to do with furthering the objectives of the business, professional, or individual employment activity.

[¶ 32] The Court's opinion concedes that the relationship between Dragomir and the social worker employed by Spring Harbor Hospital did not occur within the course and scope of the social worker's employment and thus could not create a basis for the hospital's liability on agency or *respondeat superior* theories. ¶¶ 13–14. Like *Mahar*, the social worker's actions here were illegal acts for which he was subsequently convicted. Unlike *Mahar*, the social worker's improper acts occurred after hours when he was off duty and away from the employer's premises.

[¶ 33] To allow the negligent supervision claim, the Court abandons the narrow limits it imposed for consideration of negligent supervision claims in *Fortin*. The Court expands the criteria prerequisite to a negligent supervision claim from a fiduciary relationship to any "special relationship." It then interprets "special relationship" expansively to include any plaintiff who alleges that he or she was somehow

"vulnerable" in the relationship with the defendant institution or its employees.

[¶ 34] Although acknowledging that there is nothing in the present record indicating that the hospital was aware of anything in the social worker's record that would put it on notice that the social worker had engaged in sexual improprieties with patients and might do so again, the Court allows a remand for trial or other proceedings. The Court holds that the plaintiff should again be allowed the opportunity to develop evidence of foreseeability on the part of the hospital, although the plaintiff has failed to identify such evidence in the eight years since the improprieties by the social worker were disclosed and the hospital terminated the social worker.

[¶ 35] Thus, with the Court's opinion today, businesses, professions, and individuals are exposed to suit and potential liability for negligent, improper, or illegal acts by their employees occurring off premises and after hours if the plaintiff alleges that he or she had a special or vulnerable relationship to the employer or the employee. Further, such an action may proceed past the summary judgment or motion to dismiss stage even if there is no evidence, beyond speculation or unsupported allegations, that the after-hours and off-premises improprieties of the employee were in any way foreseeable by the employer.

[¶ 36] This fundamentally changes employers' responsibility for the off-premises, after-hours actions of their employees. When "vulnerability" is all that must be alleged to "open the courtroom door," one can easily predict a dramatic expansion of claims based on after-hours employee conduct by (i) patients against healthcare professionals and institutions, (ii) adult and minor students against schools, (iii) clients against attorneys, (iv) church members against clergy, and (v) any others who can allege that as a result of differences in financial, political, psychological, professional, or spiritual power, they are or were "vulnerable" in relation to any institution or individual against whom a negligent supervision claim is asserted.

[¶ 37] I would not so dramatically expand the risks of conducting business in the State of Maine. Businesses, professions, and individuals are responsible under the law for the negligent and/or improper acts of their employees or agents done in the course and scope of their employment. They should not be responsible for every after-hours impropriety and interaction between their employees and someone who may later claim that they were "vulnerable" as a result of their relationship to the business, profession, or individual. I would affirm the good judgment of the Superior Court that refused the plaintiff's invitation to allow this dramatic expansion of business, professional, and individual liability.