STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-74

BENJAMIN WHEELER,

    Plaintiff,

v.

NORTHEAST PROVINCE OF THE
SOCIETY OF JESUS, et al.,

    Defendants.

ORDER

STATE OF MAINE
Cumberland, ss Clerk's Office

JUN 0 1 2017
1:43 p·m
RECEIVED

Before the court is a motion by defendant Northeast Province of the Society of Jesus, joined by defendant Cheverus High School and supported by defendant Roman Catholic Bishop of Portland, to report the statute of limitations issue that was the subject of this court's March 3, 2017 order to the Law Court pursuant to M.R.App.P. 24(c).

The court has considered the arguments of the parties and the considerations relating to a Rule 24(c) Report as set forth most recently in *Littlebrook Airpark Condominium Association v. Sweet Peas LLC,* 2013 ME 89 ¶ 9, 81 A.3d 348. *See in re Conservatorship of Emma,* 2017 ME 1 ¶ 7, 153 A.3d 102 (applying *Littlebrook* factors).

On the first *Littlebrook* factor – whether the question reported is of sufficient importance and doubt to outweigh the policy against piecemeal litigation – the court finds that the issue is of sufficient importance but is not convinced that the issue is sufficiently doubtful. All three of the Superior Court decisions that have considered the issue, including this court's March 3, 2017 order, have ruled the same way, and two of those decisions postdated the U.S. District Court's order seeking to certify the question of state law to the Law Court in *Allen v. Forest,* 257

F.Supp.2d 276, 280 (D.Me. 2003). Moreover, as set forth in the March 3 order, while there is a significant split of authority on the interpretation of similar statutes in other jurisdictions, Maine's statute does not contain the kind of language relied on by other jurisdictions that have limited the extended statute of limitations to actual perpetrators.

On the second *Littlebrook* factor – whether the question might not have to be decided – there are numerous factual and legal issues which, once resolved either by the court or by a jury, could make a Law Court decision on the statute of limitations unnecessary.

On the third *Littlebrook* factor – whether a decision on the statute of limitations issue would in at least one alternative dispose of the action – this action would continue as to defendant Talbot even if the institutional defendants were to prevail on their statute of limitations defense – assuming that the Law Court were to accept a report.

Finally, there is the very strong prospect that the Law Court would not accept a Report in this case given its repeated admonition that Rule 24(c) "should be used sparingly." *E.g., Littlebrook,* 2013 ME 89 ¶ 9.[1]

The potential delay involved also militates against a Report. The process of briefing the issue of whether the Law Court should accept the Report would take a number of months at a minimum. If the Law Court were to accept the Report, somewhere around a year might be lost for briefing, argument, and decision. In that event, even if the Law Court were to rule in favor of the institutional defendants on the statute of limitations issue, the case against Talbot would be delayed. If the Law Court accepted the Report but affirmed the court's March 3 ruling, the case as a whole would be significantly delayed.

---

[1] In the recent past the Law Court declined to accept reports in *Littlebrook, Conservatorship of Emma,* and *Clifford v. Maine General Medical Center,* 2014 ME 60 ¶ 76, 91 A.3d 567. In *Clifford* the Court declined to accept a Report even though it simultaneously decided an interlocutory appeal on the issue of immunity.

2

Wheeler's claims involve alleged events that he contends occurred almost 20 years ago in 1998. The court understands that a number of the important witnesses, including defendant Talbot and Bishop Gerry, are elderly.[2] Their memories are not going to improve if there is any further delay.

For all of the above reasons, the court finds that it would not be appropriate to grant the institutional defendants' motion to report.

The entry shall be:

Defendants' motion to report the statute of limitations issue that was the subject of this court's March 3, 2017 order to the Law Court pursuant to M.R.App.P. 24(c) is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June ___/___, 2017

Thomas D. Warren
Justice, Superior Court

---

[2] Prior submissions by the Diocese have stated that Bishop Gerry is now 88.

*Def Roman Catholic Bishop of Portland*

Gerald Petruccelli Esq
Petruccelli Martin & Haddow LLP
PO Box 17555
Portland ME 04112-8555

*Def Northeast Province of the Society of Jesus*

Russell Pierce, Esq.
Norman Hanson & Detroy LLC
PO Box 4600
Portland ME 04112-4600

*PHF Benjamin A. Wheeler*

Mark Randall Esq
Randall Law Office PA
PO Box 17915
Portland ME 04112

*Def Cheverus High School*

Melissa Hewey Esq
Drummond Woodsum
84 Marginal Way Suite 600
Portland ME 04101-2480

*Def James Talbot*

Lee Bals Esq
Marcus Clegg & Mistretta PA
One Canal Plaza Suite 600
Portland ME 04101-4035

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-74

STATE OF MAINE
Cumberland ss : : : Office

MAR 30 2017

RECEIVED

BENJAMIN WHEELER,

Plaintiff,

v.

ORDER

NORTHEAST PROVINCE OF THE
SOCIETY OF JESUS, et al.,

Defendants.

Before the court is a motion by defendant Roman Catholic Bishop of Portland (hereafter the "Diocese") for summary judgment and judgment on the pleadings.

Prior Proceedings

Wheeler's complaint names four defendants: the Northeast Province of the Society of Jesus, Reverend James Talbot, the Diocese, and Cheverus High School. At the outset of the action Cheverus filed a motion to dismiss. In an order dated August 12, 2016 that motion was granted in part and denied in part. Wheeler then filed an amended complaint which dropped certain claims against Cheverus and reorganized the claims against the other defendants.

Thereafter the Jesuits and Cheverus filed motions for judgment on the pleadings based on the statute of limitations. By order dated March 3, 2017 the court denied the motions by the Jesuits and Cheverus for judgment on the pleadings.

The motion for judgment on the pleadings by the Diocese adopts the statute of limitations arguments made by the Jesuits and Cheverus, and the court therefore denies the motion by the

Diocese for judgment on the pleadings for the reasons set forth in its March 3, 2017 order. The motion by the Diocese for summary judgment remains to be decided.

## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

However, where a party can demonstrate that the evidence it needs to oppose summary judgment is not in its possession but may be obtainable through discovery, decision on a summary judgment motion may be postponed. Specifically, Rule 56(f) provides that when a party can show a sufficient need for discovery to obtain admissible evidence in opposition to a motion for summary judgment, the court may order a continuance to permit depositions to be taken or discovery to be had.

2

Claims Against Diocese

As discussed in prior orders, plaintiff Benjamin Wheeler's claims in this action all stem from the allegation that Wheeler was sexually abused on several occasions by Father Talbot at St. Jude's Church in Freeport in January through April of 1998, when Wheeler was nine years old. First Amended Complaint ¶¶ 13-14. As against the named defendants other than Talbot, Wheeler's claims are essentially based on theories that they facilitated Talbot's abuse, failed to protect Wheeler from the abuse, and failed to disclose a risk that they knew or should have known Talbot presented.

Specifically, Count I of Wheeler's first amended complaint asserts claims against the Diocese based on the following:

> • Restatement 2d of Torts § 302B (conduct may be negligent if defendant realizes or should realize that it creates an unreasonable risk of subjecting another to criminal conduct by a third party);
>
> • Restatement 2d of Torts § 317 (employer's duty to control employee acting outside of scope of employment where special relationship exists);
>
> • Respondeat superior.[1]

Count II of Wheeler's first amended complaint asserts an intentional infliction of emotional distress claim against the Diocese based on its alleged facilitation of Talbot's abuse and its non-disclosure of what Wheeler alleges was a known risk presented by Talbot.

Count III of Wheeler's first amended complaint asserts a claim that the Diocese engaged in fraudulent concealment of Talbot's propensity to abuse children.

---

[1] In its August 12, 2016 order the court noted that the Law Court has not expressly adopted Restatement § 302B but has been willing to consider claims under that section and that the Law Court has limited the application of Restatement § 317 to situations where a "special relationship" exists between the employer and the alleged victim. As against the Diocese (as opposed to Cheverus), Wheeler has alleged the existence of a "special relationship."

3

Count IV of Wheeler's first amended complaint asserts a civil conspiracy claim against the Diocese and the other defendants.

Positions of the Parties

The Diocese contends that there is no evidence that the Diocese had any knowledge of any accusations against Talbot or of the risk that Talbot would sexually abuse minors until June 1998 – after the alleged abuse of Wheeler had occurred – and that the Diocese immediately suspended Talbot from his clerical duties in the Diocese in June 1998 when it learned of an accusation against Talbot involving a child named Michael Doherty. The Diocese argues that knowledge by the Diocese that Talbot presented a risk is an essential element of all of Wheeler's claims, and that the Diocese is therefore entitled to summary judgment.

The Diocese further argues that its motion is not premature because discovery was undertaken by the same attorney now representing Wheeler in a lawsuit brought by Doherty and that discovery did not uncover any evidence of knowledge on the part of the Diocese.

Wheeler for his part contends that the Diocese's summary judgment motion is premature because there are several avenues of discovery that should be undertaken and Wheeler is not limited by the discovery taken in the Doherty case. Wheeler also contends that on the existing record there is sufficient evidence that at least one person in authority in the Diocese was on notice of the possibility of sexual abuse by Talbot prior to the alleged abuse of Wheeler. Specifically, Wheeler has offered evidence that a number of years prior to the alleged victimization of Wheeler, Father Chabot, the pastor of Sacred Heart parish in Yarmouth, had seen Talbot bring Michael Doherty, at that time a student at Cheverus, back to the Rectory to stay overnight on one or more occasions. Doherty Affidavit ¶¶ 6-11. As noted above, Doherty

4

later accused Talbot of sexual abuse, and Wheeler argues that Doherty's overnight stays at the Rectory with Talbot at least put the Diocese on notice of the risk that Talbot would victimize children.[2]

Rule 56(f)

While arguing that the motion by the Diocese is premature and that further discovery is necessary, Wheeler has not followed the proper procedure for seeking a continuance under Rule 56(f). As the Law Court ruled in *Bay View Bank N.A. v. Highland Golf Mortgagees Realty Trust,* 2002 ME 178 ¶ 22, 814 A.2d 449, a party seeking a continuance for further discovery under Rule 56(f) must make a motion under that rule. The Court observed that First Circuit precedent provides "a helpful, but not mandatory, framework" for evaluating such a motion and includes the following requirements: (1) that the motion be made within a reasonable time after the filing of the summary judgment motion; (2) that the movant place the trial court on notice that it seeks to delay action on the motion; (3) that the movant has been diligent and show good cause why the discovery sought was not previously practicable; (4) that the motion set forth a plausible basis for believing that the discovery sought would probably leads to evidence that would affect the outcome of the motion; and (5) that the motion attest that the movant has personal knowledge of the recited grounds for the continuance. *Id.*

In this case Wheeler's counsel has not filed a motion and does not attest that he has personal knowledge of the requested continuance. He has, however, promptly placed the court on notice that he is seeking further discovery. Moreover, and crucially, counsel for the Diocese is

---

[2] Wheeler also offers evidence that the Bishop of Portland had been aware that Talbot had drunk to excess on occasion, that Talbot had used foul language in the presence of children, and had been caught stealing from the collection plate. While that evidence may reflect on Talbot's fitness for the ministry, it is not adequate to demonstrate that the Diocese either knew or should have known that Talbot represented a risk of sexually abusing children.

5

more than ordinarily knowledgeable as to the rules of civil procedure, and the Diocese does not raise the absence of a motion or the absence of any attestation of personal knowledge as reasons to ignore Wheeler's 56(f) request.[3] Nor does the Diocese argue that counsel for Wheeler has not been sufficiently diligent in seeking discovery to date.

As noted above, the First Circuit precedent referred to in the *Bay View Bank* decision is "not mandatory." In addition, the court is not ordinarily inclined to resolve issues based on arguments that have not been raised by the parties. Accordingly, it will focus on the argument that has been made by the Diocese – that there is no plausible basis for concluding that further discovery would elicit evidence that the Diocese had knowledge of the risk that Talbot would sexually abuse children. On that issue Wheeler is seeking to depose Talbot and Bishop Gerry, neither of whom has never been deposed, and to obtain any personnel file maintained on Talbot by the Jesuits or the Diocese. The Diocese argues that Talbot previously invoked the Fifth Amendment, that Bishop Gerry is 88 years old, and that counsel for Wheeler previously had the opportunity to take discovery when representing Michael Doherty in a case filed in 1998.

Even if he has the same counsel, Wheeler's discovery cannot be limited because discovery was not taken in the Doherty case. Moreover, any knowledge or suspicion (or lack thereof) that Bishop Gerry had concerning Talbot would be highly relevant to Wheeler's claims against the Diocese. Wheeler has also furnished information that in 2015 Talbot made some admissions during a parole hearing that raises the possibility that Talbot would no longer invoke the Fifth Amendment.[4] Finally, although Wheeler provides no support for his contention that

---

[3] This may be because any such argument would immediately have elicited a formal Rule 56(f) motion with an attestation of personal knowledge by counsel for Wheeler.

[4] That information is hearsay and is not admissible on summary judgment but does provide a basis for concluding that a deposition of Talbot would not necessarily be futile.

there is a personnel file on Talbot that was supposed to be turned over to Massachusetts authorities, Wheeler is entitled to ask for any such personnel file hat may exist.

Accordingly, the court concludes there is a plausible basis to allow further discovery.


Disputed Facts

Discovery may lead to evidence of actual knowledge within the Diocese of the risk that Talbot allegedly presented. The court agrees with the Diocese that unless there is evidence that the Diocese had such knowledge prior to the alleged abuse of Wheeler in the first four months of 1998, certain of Wheeler's causes of action are unlikely to be viable. The fraudulent concealment cause of action requires evidence of knowledge on the part of an alleged tortfeasor. *Picher v. Roman Catholic Bishop of Portland*, 2013 ME 99 ¶¶ 3-4, 82 A.3d 101 (*Picher II).* There also cannot be a civil conspiracy claim based on a common plan or scheme with respect to information that is not known. Finally, on Wheeler's IIED claim there is at least a question whether emotional distress could have been intentionally or recklessly inflicted if the Diocese was not aware of a risk that Talbot would victimize children.

Two of Wheeler's causes of action, however, would not necessarily require actual knowledge. Wheeler is asserting claims under Sections 302B and 317 of the Restatement 2d of Torts, and claims under those sections only require that the Diocese have reason to know of the risk. Thus Restatement section 302B states that an act or omission may be negligent if the actor "realizes or should realize" that it involves an unreasonable risk of exposing another to criminal conduct. *See Gniadek v. Camp Sunshine*, 2011 ME 11 ¶ 29, 11 A.3d 308, citing comment e(D) of Restatement § 302B.

7

Restatement section 317 similarly establishes the duty of an employer to control an employee acting outside the scope of employment if, among other things, the employer "knows or should know" of the necessity for exercising such control and if a special relationship exists. Restatement § 317(b)(ii). *See Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57 ¶¶ 38-39, 871 A.2d 1208.[5]

In the court's view, even aside from the Rule 56(f) issue, the evidence submitted by Wheeler that Father Chabot saw and acknowledged the presence of Doherty in the Rectory when Talbot brought Doherty back for overnight strays – events for which it would be difficult to think of an innocent explanation – would be sufficient to raise a disputed issue of fact for trial on the issue of whether the Diocese should have known of Talbot's behavior and the resulting risk that he would victimize children. This follows from the principle that on a motion for summary judgment, all inferences must be drawn in favor of the party opposing the motion.

The court does not mean to suggest that the issue of whether the Diocese knew or should have known about Talbot would necessarily be dispositive in this case. For example, as the Diocese notes, with respect to certain of his causes of action, Wheeler would have to prove that a special relationship existed. That issue is not raised in the pending motion.

In reaching the above result, the court should note that it has disregarded various assertions in Wheeler's opposition memorandum that are not supported in the record.[6]

---

[5] In addition, Wheeler's *respondeat superior* claim against the Diocese, to the extent it is otherwise viable, also would not appear to require actual knowledge on the part of the Diocese. *See Picher v. Roman Catholic Bishop of Portland*, 2009 ME 67 ¶ 32, 974 A.2d 286 (*Picher I*), citing to Restatement 3d of Agency § 7.07; *Dragomir v. Spring Harbor Hospital*, 2009 ME 51 ¶¶ 12-13, 970 A.2d 310.

[6] These include assertions that the Jesuits told Cheverus to watch Father Talbot (Opposition at 2), that Cheverus made certain assurances to the Jesuits (id.), that Talbot cryptically reported to Cheverus that there was "no outward talk about internal situation" (id.), that the Pastor invited Father Talbot and the Bishop to dinner at the Rectory (id. at 3), that Talbot used vulgar language during play rehearsals (id.),

8

Since the court will allow further discovery directed to the issue of the knowledge and awareness of the Diocese and since discovery will necessarily also continue on other issues, the court shall allow the Diocese to decide, once discovery has occurred, whether to renew its existing motion or whether it wishes to refile if it has a basis to do so.

The entry shall be:

1. The motion by defendant Roman Catholic Bishop of Portland for judgment on the pleadings is denied.

2. As set forth above, the motion for summary judgment by defendant Roman Catholic Bishop of Portland shall be continued to allow discovery as outlined above with respect to the claims that depend on whether the Diocese had actual knowledge of the risk presented by Father Talbot.

3. As set forth above, the motion for summary judgment by defendant Roman Catholic Bishop of Portland is denied as to claims that do not depend on whether the Diocese had actual knowledge of the risk presented by Father Talbot, including those that may turn on whether the Diocese had reason to know of the risk presented by Father Talbot.

4. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March __30__, 2017

Thomas D. Warren
Justice, Superior Court

---

that the Massachusetts Supreme Court ordered the Jesuits to produce Talbot's personnel file (id. at 4), and that the Diocese in Maine moved priests from parish to parish when abuse occurred (id. at 5).

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-74

BENJAMIN WHEELER,

     Plaintiff,

v.

                                            ORDER

NORTHEAST PROVINCE OF THE
SOCIETY OF JESUS, et al.,

     Defendants.

Before the court is a motion to dismiss plaintiff Benjamin Wheeler's complaint as against defendant Cheverus High School.

Wheeler's complaint names four defendants: the Northeast Province of the Society of Jesus, Reverend James Talbot, the Roman Catholic Bishop of Portland, and Cheverus High School. The centerpiece of the complaint is Wheeler's allegation that he was sexually abused on several occasions by Rev. Talbot at St. Jude's Church in Freeport in early 1998 when Wheeler was nine years old. Complaint ¶¶ 13-14.

Cheverus is named as a defendant based on allegations that at the time of the abuse Rev. Talbot was serving on the faculty at Cheverus even though Stephen Dauber, identified as the president or principal of Cheverus, was aware that Talbot had a propensity to sexually abuse minor boys. Complaint ¶ 10. Wheeler alleges that Talbot was suspected of sexually abusing students at Talbot's previous teaching job at Boston College High School and that Dauber, aware of the mounting suspicions against Talbot at BC High, had encouraged Talbot to relocate to Cheverus. *Id.*

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 12 2016

RECEIVED

Wheeler alleges that while on the faculty of Cheverus and while under the authority, direction, and supervision of Cheverus as well as that of the Bishop of Portland and the Jesuits, Rev. Talbot was allowed by the Bishop to conduct parish activities at St. Jude's in Freeport, where the sexual abuse allegedly occurred. Complaint ¶¶ 11-12, 15. He further alleges that the Jesuits, the Bishop, and Cheverus were aware of the danger that Rev. Talbot presented to minor boys and that Talbot "used his position" with Cheverus, the Bishop, and the Jesuits to obtain the trust of Wheeler and Wheeler's parents in order to enable the alleged abuse. Complaint ¶¶ 17-19.

In count I of the complaint Wheeler asserts a claim against all defendants for sexual abuse. In count II he asserts a claim against all defendants for intentional infliction of emotional abuse (IIED). In count III he asserts a claim against all defendants for negligent infliction of emotional abuse (NIED). Count IV is a claim against all defendants for fraud. Count V is a claim for punitive damages. Count VI is a claim against all defendants for civil conspiracy. Count VII alleges a claim – nominally against all defendants but presumably excluding Talbot – for respondeat superior.

For purposes of a motion to dismiss, the material allegations of the complaint must be taken as admitted. *Ramsey v. Baxter Title Co.*, 2012 ME 113 ¶ 2, 54 A.3d 710. The complaint must be read in the light most favorable to the plaintiff to determine if it sets forth elements of a cause of action or alleges facts that would entitle plaintiff to relief pursuant to some legal theory. *Bisson v. Hannaford Bros. Co., Inc.*, 2006 ME 131 ¶ 2, 909 A.2d 1010. Dismissal is appropriate only when it appears beyond doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim. *Moody v. State Liquor & Lottery Commission,* 2004 ME 20 ¶ 7, 843 A.2d 43. However, a plaintiff may not proceed if the complaint fails to allege

essential elements of the cause of action. *See Potter, Prescott, Jamieson & Nelson P.A. v. Campbell,* 1998 ME 70 ¶¶ 6-7, 708 A.2d 283.

The court will consider each of the causes of action asserted in the complaint as they apply to Cheverus with the exception of count V (punitive damages). That is not a separate claim but merely a kind of damages that may be recoverable if the complaint otherwise states a claim, if plaintiff prevails at trial, and if the specific prerequisites for punitive damages are proven by clear and convincing evidence.

In considering the claims against Cheverus, the court will assume throughout the truth of Wheeler's allegations that Rev. Talbot sexually abused Wheeler at St. Jude's Church when Wheeler was nine years old.

Count I – Sexual Abuse

Although count I of the complaint is captioned as a claim for "sexual abuse," counsel has clarified that count I constitutes a common law claim for assault and battery. Plaintiff's Opposition to Motion to Dismiss dated April 11, 2016 at 5. Counsel for plaintiff also argues that the liability of Cheverus on Count I is premised on respondeat superior and on civil conspiracy. *Id.* Since civil conspiracy is separately pleaded in count VI, and respondeat superior is separately pleaded in count VII, the court will address those claims below.

In opposing the motion to dismiss, plaintiff also argues at some length that the complaint states a claim for negligently creating a risk of harm to third persons under Restatement (Second) Torts § 302B and for negligent supervision under Restatement (Second) Torts §§ 315 and 317. Plaintiff's Opposition to Motion to Dismiss dated April 11, 2016 at 7-15. Neither of those

3

theories is expressly mentioned in the complaint,[1] but the court will address them to the extent that the factual allegations can be construed to state those claims.

Restatement (Second) Torts § 302B

Restatement (Second) Torts § 302B, titled "Risk of Intentional or Criminal Conduct," provides as follows:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

The Law Court has not expressly adopted section 302B but it was willing to consider whether that section should be applied in a case involving sexual abuse by a former summer camp volunteer against a former camper after camp had ended. *Gniadek v. Camp Sunshine*, 2011 ME 11 ¶¶ 28-31, 11 A.3d 308. In that case the Court focused specifically whether section 302B applies when a defendant has "brought into contact or association" with the plaintiff a person who the plaintiff "knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct." Restatement (Second) Torts § 302B, comment e(D). *See id.* illustration 9. Certain of the factual allegations in Wheeler's complaint track Restatement § 302B. *See* Complaint ¶¶ 11-12, 15, 17-19.

In *Gniadek* the Law Court found that there was no evidence that Camp Sunshine had known that the volunteer had presented a particular risk and that the Camp had not created a "peculiar opportunity" for misconduct. 2011 ME 11 ¶ 31. It therefore affirmed summary judgment in favor of the camp on the § 302B claim.

---

[1] The only express mention of "negligence" is made in count III (NIED).

4

In this case, given the allegations in the complaint and the standard to be applied on a motion to dismiss, the court concludes that Wheeler 's claim under Restatement § 302B is not subject to dismissal. In discussing Restatement § 302B, the Law Court in *Gniadek* cited to the Texas case of *Golden Spread Council No. 562 of the Boy Scouts v. Akins*, 926 S.W.2d 287, 289, 290-92 (Tex. 1996), describing it as a case where liability might exist where a boy scout troop recommended a scout master to another organization after becoming aware of some sexual misbehavior by the scout master. 2011 ME 11 ¶ 30. Before the court can consider whether Restatement § 302B could or should be adopted in this case, some factual development is necessary as to the extent of Cheverus's knowledge, if any, of Talbot's propensity for sexual abuse and to what extent, if any, Cheverus was aware of or approved or facilitated Talbot's involvement in parish activities at St. Jude's involving contact with children.

Restatement (Second) Torts § 317

The Law Court has held that Restatement (Second) Torts § 317, which applies to an employer's potential duty to control employees while acting outside the scope of their employment, only applies in cases of this nature if there is a "special relationship" between the defendant employer and the alleged victim of a sexual assault. *Dragomir v. Spring Harbor Hospital*, 2009 ME 51 ¶ 16, 970 A.2d 310; *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57 ¶ 39, 871 A.2d 1208. The Law Court has also required that the existence of a "special relationship" be pled with specificity. *E.g., Bryan R. v. Watchtower Bible and Tract Society*, 1999 ME 144 ¶ 21, 738 A.2d 839.

In this case Wheeler has not alleged any facts that, if proven, could support a finding of the kind of special relationship between Cheverus and Wheeler that would allow the application

5

of Restatement § 317. Wheeler does not allege that he attended Cheverus or that he had any relationship with Cheverus that even approached the kind of relationship necessary for the potential imposition of liability under Restatement § 317. *See Dragomir,* 2009 ME 51 ¶¶ 18-21, *Fortin,* 2005 ME 57 ¶¶ 31-39. Plaintiff's theory appears to be that Rev. Talbot would not have come to Maine without the involvement of Cheverus and that Cheverus's reputation among Catholics assisted Talbot in gaining access to Wheeler in order to abuse him. This is not sufficient to allege a special relationship, and the complaint therefore does not state a claim under Restatement § 317.

## Count II – Intentional Infliction of Emotional Distress

To proceed on a claim of IIED, a plaintiff must establish that:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person could be expected to endure it."

*Curtis v. Porter*, 2001 ME 158 ¶ 10, 784 A.2d 18.

Liability for IIED does not require a special relationship. In this case the court concludes that under the standard applicable to a motion to dismiss, the complaint adequately states a claim for IIED against Cheverus. As with Wheeler's claim under Restatement § 302B, he will have to prove that Cheverus was aware of Rev. Talbot's propensities and the risk Talbot presented to minor children. Moreover, he will also have to prove that Cheverus was sufficiently aware of or was sufficiently involved in approving or facilitating Talbot's involvement in parish activities at

6

St. Jude's before it could be found that Cheverus played a role in "inflicting" emotional distress upon Wheeler because of Talbot's alleged activity.

Count III – Negligent Infliction of Emotional Distress

As with a claim under Restatement § 317, a NIED claim requires that a special relationship exist between the plaintiff and the person or entity alleged to have negligently inflicted the emotional harm. *Curtis v. Porter*, 2001 ME 158 ¶ 19. For the same reasons discussed above with respect to Restatement § 317, Wheeler's complaint does not allege facts which, if proven, would establish the necessary special relationship between Wheeler and Cheverus. Accordingly, the motion to dismiss is granted as to count III.[2]

Count IV – Fraud

Wheeler is not alleging any affirmative fraud or misrepresentation by Cheverus. Instead he is alleging that Cheverus was part of a "conspiracy of silence" and is thereby asserting a claim of fraudulent concealment. To prevail on a claim for fraudulent concealment, "a plaintiff must prove, by clear and convincing evidence, (1) a failure to disclose, (2) a material fact, (3) when a legal or equitable duty to disclose exists, (4) with the intention of inducing another to act or refrain from acting in reliance on the non-disclosure, and (5) the plaintiff in fact relied upon the non-disclosure to the plaintiff's detriment." *Picher v. Roman Catholic Bishop of Portland*, 2013 ME 99 ¶ 3, 82 A.3d 101 (*Picher II*).

The threshold issue on this claim is whether the legal or equitable duty to disclose that is necessary for a claim of fraudulent concealment arises only from the kind of special relationship

---

[2] The dismissal of his freestanding NIED claim will not prevent Wheeler from recovering damages for emotional distress if he prevails on one or more of his other claims.

7

required for a claim under Restatement ¶ 317 or a NIED claim.[3] The indication in the Law Court's decision in *Picher II* is that such a special relationship is required, at least unless there is an allegation that Cheverus became aware of the abuse while it was happening. *See Picher II*, 2013 ME 99 ¶ 4, citing to *Fortin*, 2005 ME 57 ¶ 29, 32-35.

In this case, as discussed above, Wheeler does not adequately allege a "special relationship" and he does not allege that Cheverus became aware of the abuse while it was happening. In addition, Wheeler does not allege that Cheverus had an intention of inducing Wheeler or other parish children to become involved with Rev. Talbot at St. Jude's in reliance on the non-disclosure of Talbot's alleged proclivities. Accordingly, the motion to dismiss count IV is granted.

Count V – Civil Conspiracy

Civil conspiracy is not a standalone tort. Unless another tort has been adequately alleged, a claim for civil conspiracy cannot be asserted. *See Potter, Prescott, Jamieson & Nelson P.A. v. Campbell*, 1998 ME 70 ¶ 8. Civil conspiracy is a basis to extend liability to "'those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify his acts done for his benefit." *Cohen v. Bowdoin*, 288 A.2d 106, 111-12 (Me. 1972), *quoting* Prosser, Torts, 3rd Ed. p. 259.

In this case Wheeler alleges that Cheverus, the Bishop of Portland, and the Jesuits – along with perhaps Talbot himself – "acted in concert" in covering up Talbot's inappropriate conduct with minors and his propensity to sexually abuse children. Complaint ¶ 44. This

---

[3] Alternatively, a duty to disclose might be found between parties to a business transaction, but this case does not involve that situation.

8

conclusory allegation does not adequately allege that Cheverus acted with the other defendants as part of a common plan. Accordingly, as pleaded, Wheeler's civil conspiracy count fails to state a claim.

## Count VII – Respondeat Superior

Count VII of the complaint alleges that Talbot was aided in engaging in sexual abuse by the existence of an agency relationship with Cheverus, the Bishop of Portland, and the Jesuits. Complaint ¶ 48. To the extent that this is an allegation that Talbot would not have come to Maine and would not have gone to St. Jude's unless he had joined the Cheverus faculty, count VII does not state a claim. To the extent that Wheeler is arguing that Cheverus is responsible under the standard principle of respondeat superior, it does not state a claim. Wheeler does not allege that the sexual abuse allegedly perpetrated by Talbot fell within Talbot's scope of employment under *Maher v. StoneWood Transport,* 2003 ME 63 ¶ 13, 823 A.2d 540, and Restatement (Second) Agency § 228.

Finally, to the extent that Wheeler is seeking to invoke a theory of "apparent authority," the complaint does not allege that there was any conduct by Cheverus that led Wheeler to believe that Talbot was acting as an agent of Cheverus in connection with Talbot's parish activities at St. Jude's or in connection with Talbot's alleged sexual abuse. *See Gniadek,* 2011 ME 11 ¶¶ 33-36. A close link between the alleged tortious conduct and the alleged apparent authority of the agent must be alleged and proven in order for a principal to be held liable under a theory of apparent authority. 2011 ME 11 ¶ 34.

Accordingly, count VII of Wheeler's complaint fails to state a claim as against Cheverus.

9

In his papers opposing the motion to dismiss, counsel for plaintiff has requested an opportunity to amend his complaint if the motion to dismiss is granted. Based on the facts already alleged, it would appear unlikely that – as to some of the counts alleged – plaintiff can remedy certain of the allegations that have been found to be insufficient.[4] However, it may be that plaintiff can amend to allege some of the essential elements of the claims that are subject to dismissal and plaintiff will therefore be given leave to replead.

The entry shall be:

The motion to dismiss by Cheverus High School is denied as to the allegations in the complaint that state a claim under Restatement (Second) Torts § 302B and a claim for intentional infliction of emotional distress. In all other respects, the motion to dismiss by defendant Cheverus High School is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: August __12__, 2016

Thomas D. Warren
Justice, Superior Court

---

[4] For instance, as to Cheverus, the court doubts that plaintiff can successfully allege the special relationship required to state a claim under certain counts as discussed above.

10